### UNITED STATES of America, Plaintiff–Appellee,

v.

$405,089.23 U.S. CURRENCY; $8,929.93 U.S. Currency; $123,000.00 U.S. Currency; One Bell 47 G–2 Helicopter, U.S. Registration Number N59H; Stormy Seas Four (Shrimp Boat) official number 2159; One Piper Cherokee 6 Airplane; One Hundred Thirty–Eight (138) Silver Bars; One 1985 Jaguar, VIN: SAJNV5842FC119348; One 1981 Wellcraft, VIN: HALLWELT1593G788; One 1988 Jaguar, VIN: SAJHU164JC530324; One 1986 Porsche, VIN: WPOAA0940GN454897; One 1988 Jaguar, VIN: SAJAV1643JC521364; One 1986 Chevrolet, VIN: 1G8CS18RXG0140772; One 1988 Mitsubishi, VIN: JA7FL24D9JP0505914; One 1987 Nissan, VIN: JN6ND11S3HW033709; One 1987 Suzuki, VIN: 1S4JC51C2H4154485; One 1988 Jeep, VIN: 2BCHV8157JB523469; One 1988 Chevrolet, VIN: 1GCFC24K0JZ253793; One 1983 Chevrolet, VIN: 1G8CS18B9D8132968, Defendants,

Charles Wesley Arlt; James Eli Wren; Payback Mines, Inc., Claimants–Appellants.

No. 93–55947.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 1997.

Decided Sept. 11, 1997.

Janet C. Hudson, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.

David M. Michael, San Francisco, CA, for claimants-appellants.

Before: REINHARDT, T.G. NELSON and HAWKINS, Circuit Judges.

Opinion by Judge T.G. NELSON; Partial Concurrence and Partial Dissent by Judge REINHARDT.

T.G. NELSON, Circuit Judge:

This case of civil forfeiture has returned to us on remand from the Supreme Court after the Court, in *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), reversed our holding in *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), that the forfeiture violated the Double Jeopardy Clause of the Fifth Amendment. We now consider the claimants' remaining arguments challenging the district court's grant of summary judgment in favor of the United States in the Government's forfeiture action under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6). We have jurisdiction under 28 U.S.C. § 1291. We reverse.

## FACTS AND PROCEDURAL HISTORY

On June 12, 1991, Charles Arlt, James Wren, and others were indicted on multiple federal criminal charges, including charges relating to the illegal manufacture of methamphetamine and money laundering. On June 17, 1991, the Government instituted this civil forfeiture action. The property listed in the forfeiture complaint consisted of the following items:

(1) $405,089.23 in a Security Pacific Bank account in the name of James Hill;

(2) $8,929.93 in three Bank of America accounts, two in the name of Wren and one in the name of Payback Mines;

(3) $123,000.00 in United States Currency and 138 silver bars seized at Mayhill Bail Bonds, held in the name of Wren;

(4) One Bell 47 G–2 helicopter, purchased by Wren in the name of Payback Mines;

(5) One shrimp boat, the Stormy Seas Four, purchased by Wren in the name of Payback Mines;

(6) One Piper Cherokee 6 airplane, purchased by Wren in the name of Payback Mines;

(7) Eleven cars and one boat, purchased at auction by Wren in the name of Payback Mines.

The Government argued that this property was connected to the criminal offenses that were the subject of the June 12 indictment. The complaint alleged that the property was forfeitable on two independent grounds: as proceeds of illegal narcotics transactions under 21 U.S.C. § 881(a)(6), and as property involved in money laundering activities under 18 U.S.C. § 981(a)(1)(A).[1]

Arlt, Wren, and Payback Mines, a business owned by Arlt, filed claims to the property. The district court, pursuant to a stipulation between the parties, stayed the civil forfeiture action pending the completion of the parallel criminal cases.

On March 27, 1992, Arlt, Wren, and their codefendants were convicted of the criminal charges.[2] On December 4, 1992, the Government moved for summary judgment in the civil forfeiture proceeding, relying on the criminal convictions, a declaration submitted by I.R.S. Special Agent Phillip Mullins, and various pieces of documentary evidence. The Government argued that this evidence established probable cause and shifted the burden of proof to the claimants (19 U.S.C. § 1615) who had failed to demonstrate that their property was not subject to forfeiture.

On April 1, 1993, the district court granted the Government's summary judgment motion and entered a judgment ordering that the property be forfeited to the United States. On the claimants' pro se appeal, we reversed the judgment of forfeiture on September 6, 1994, holding that the forfeiture violated the Double Jeopardy Clause of the Fifth Amendment. *See United States v. $405,089.23 U.S.*

---

**1.** The Government has abandoned the money laundering theory in this appeal (*see* Appellee's Supplemental Brief at 36 n. 13), and we do not discuss it here.

**2.** We reversed Arlt's criminal conviction in *United States v. Arlt*, 41 F.3d 516 (9th Cir.1994). The Government notified us at oral argument that Arlt has since been retried and convicted, and that an order of criminal forfeiture was entered

upon the property that is the subject of this action. If that is true, the order of criminal forfeiture might render moot any claim Arlt may have to the property that is the subject of this action. We leave that question to the district court on remand. Because such developments would not render moot the interests of Wren and Payback Mines with regard to the property, but would only forfeit Arlt's interest, we consider the merits of this appeal.

*Currency,* 33 F.3d 1210 (9th Cir.1994). The Supreme Court disagreed, however, and reversed our decision in *United States v. Ursery,* ——— U.S. ———, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). The Supreme Court remanded this case for consideration of the claimants' remaining arguments. On January 13, 1997, we ordered the parties to submit supplemental briefs discussing these remaining issues.[3]

## ANALYSIS

The claimants argue that the Government failed to demonstrate at the institution of the forfeiture proceeding that there was probable cause to believe that the targeted property had a substantial connection to the claimants' narcotics activity. We review *de novo* the district court's conclusion that probable cause existed to support the forfeiture action. *United States v. One 1986 Ford Pickup,* 56 F.3d 1181, 1186 (9th Cir.1995). We also review a district court's grant of summary judgment *de novo. Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996).

## I.

 Forfeiture actions under 21 U.S.C. § 881(a)(6) require the Government to provide the district court with "a showing of 'probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity.'" *One 1986 Ford Pickup,* 56 F.3d at 1187 (quoting *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1363 (9th Cir.1986)). This determination of probable cause is based on "the aggregate of facts" and may be established by circumstantial evidence. *United States v. U.S. Currency, $30,060.00,* 39 F.3d 1039, 1041 (9th Cir.1994). The Government may establish probable cause by relying on "otherwise inadmissible hearsay" because "[t]he question of probable cause depends not upon the admissibility of the evidence upon which the government relies but only upon the legal sufficiency and reliability of the evidence." *United States v. One 56–Foot Motor Yacht Named the Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983).

 "[T]he government's belief that the property is subject to forfeiture must be

more than a mere suspicion but can be less than prima facie proof." *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1071 (9th Cir.1994). *See also United States v. Dickerson,* 873 F.2d 1181, 1184 (9th Cir. 1988) (holding that the Government's "facts give rise to no more than a mere suspicion that the [targeted] plane was involved in narcotics transport."). "Probable cause to believe that the property is involved in some illegal activity is not enough-the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes." *$191,910.00,* 16 F.3d at 1071. Therefore, "a mere suspicion [that the money is connected to some] illegal activity is not enough to establish probable cause that the money was connected to drugs." *$30,060.00,* 39 F.3d at 1044. The facts of this case must be examined to determine whether, given the totality of the circumstances, there was probable cause to believe the property was substantially connected to the sale of controlled substances. *See One 1986 Ford Pickup,* 56 F.3d at 1187.

 In evaluating the scope of evidence that can be considered when making probable cause determinations, we have held: "[T]he government must have probable cause at the time it institutes forfeiture proceedings. In seeking to establish that it had probable cause to bring these proceedings, the government may not rely on evidence acquired after the forfeiture complaint was filed." *$191,910.00,* 16 F.3d at 1071. In the district court and the first appeal to this court, the Government relied heavily on the claimants' subsequent convictions to support the finding of probable cause. In our previous opinion in this case, we noted:

> In seeking to satisfy its probable cause burden, the government relies almost exclusively on Arlt's and Wren's criminal convictions. Because these convictions were not obtained until *after* the institution of this forfeiture action, it may not do so.

*$405,089.23,* 33 F.3d at 1215 n. 2 (citing *$191,-910.00,* 16 F.3d at 1066–71).

---

3. In this appeal, the claimants are represented by counsel.

In its supplemental brief on the remaining issues before this court, the Government has wisely taken heed and now concedes that it "agrees that claimants' convictions may not be considered in deciding whether the government had probable cause for forfeiture at the time the complaint was filed." (Appellee's Supplemental Brief at 27.) The Government further abandons its reliance on the indictment returned against Arlt and Wren, upon which it had also relied in the district court (*Id.* at 30). Therefore, the determination of the existence of probable cause for this forfeiture proceeding rises or falls on the strength of the only remaining piece of evidence: a lengthy affidavit submitted by I.R.S. Special Agent Phillip Mullins. We will examine each targeted asset in turn.

### A. The $405,089.23 in the Security Pacific Bank.

■ In the Mullins affidavit, Mullins reports that an agent told him that a "confidential, reliable citizen informant" told the agent that $400,000.00 that Arlt had in a Luxembourg bank account was being wire-transferred to the seized account at Security Pacific Bank. The affidavit provided independent evidence that in March 1991, such a wire transfer did occur to the Security Pacific account of James Hill.

In a post-arrest interview before the indictment was returned against the claimants, Hill admitted having knowledge that Arlt was "trying to hide his money by putting it in the [sic] Hill's account" and stated that "he suspected that all of Arlt's cash was not from legal sources." The $400,000.00 deposited in Arlt's Luxembourg account originated from two cashier's checks purchased by Wren and Arlt with cash in the United States.

This evidence, contained in the Mullins affidavit, is not sufficient to support a finding of probable cause that this money was connected to Arlt's and Wren's illegal narcotics activity. The evidence demonstrates a transfer of a large sum of money with original ties to cash, but there is no evidence of a connection between this particular money and drug activity. The Government did not present

evidence, for example, that Arlt or Wren had purchased or sold a large quantity of derivative chemicals around the same time as the transfers or, for that matter, any evidence regarding the origin of the cash used to purchase the cashier's checks. As noted above, the "mere suspicion [that the money is connected to some] illegal activity is not enough to establish probable cause that the money was connected to drugs." *$30,060.00*, 39 F.3d at 1044. Hill's statement that he suspected Arlt's cash "was not from legal sources" is nothing more than a vague suspicion of some illegal activity.[4]

■ The mere fact that the transactions involved a large sum of money that had its origins in cash is also insufficient. We have held that "the test requires more than the mere existence of a large amount of cash to establish a connection between that cash and illegal drug transactions; the money must be 'in combination with other persuasive circumstantial evidence.'" *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir.1989) (quoting *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir.1984)). We have also noted that "any amount of money, standing alone, would probably be insufficient to establish probable cause for forfeiture." *$191,910.00*, 16 F.3d at 1072. *See also $30,060.00*, 39 F.3d at 1041 ("[I]t is necessary to demonstrate by some credible evidence the probability that the money was in fact connected to drugs."). Therefore, the large sum of money in the Security Pacific account cannot by itself establish probable cause.

■ The Mullins affidavit contains a detailed account of the various activities of Arlt, Wren, and others in organizing and managing a large narcotics operation. There can be little doubt that the Government presented sufficient evidence to establish probable cause for the belief that Arlt and Wren were heavily involved in the illegal acquisition and distribution of derivative chemicals used in the manufacture and distribution of methamphetamine. What the Mullins affidavit lacks, however, is a sufficient connection between

---

4. The Government has only raised a suspicion that Arlt's cash came from some illegal source. Absent a specific connection between the cash and the drug activity, the Government has not

demonstrated that it is any more likely that the cash originated from the drug activity than that it originated from another legal or illegal source.

the detailed narcotics activity and the particular assets targeted by the Government's forfeiture proceeding. In one of our previous forfeiture cases, for example, the targeted asset was used to transport drugs and was seen being loaded by the claimants. *United States v. One 1978 Piper Cherokee Aircraft*, 91 F.3d 1204, 1209 (9th Cir.1994). That nexus is lacking in this case, and without it, the Government cannot establish probable cause for its forfeiture proceeding.

**B. *The $8,929.93 in Bank of America Accounts and the $123,000 in Cash and 138 Silver Bars at Mayhill Bail Bonds.***

 The only evidence in the Mullins affidavit concerning the Bank of America accounts is that signature authority for the accounts was held by Wren, Arlt, and others. There is no evidence regarding the origin of these funds. The only evidence regarding the cash and silver bars held at Mayhill Bail Bonds is that Millie Mayhill, the apparent owner, is Wren's sister, and she saw Wren deposit the cash and silver bars in 1991. This does not establish the requisite probable cause. The Government's evidence concerning these assets suffers from the same deficiency as the evidence concerning the Security Pacific Bank account: absent a nexus to the illegal drug activity, the Government has failed to demonstrate probable cause for the forfeiture of these assets.

**C. *The Helicopter, Shrimp Boat, Airplane, and the Eleven Cars and One Boat Purchased at Auction.***

 The evidence in the Mullins affidavit regarding these remaining assets is substantially the same. The purchases were all made in cash, and the property was placed in the name of Payback Mines. Wren delivered the cash in a variety of forms, including in a briefcase and a paper bag. In at least one instance, the bag was covered with dirt. During the purchase of the shrimp boat and the auction items, a firearm was present, but it was never used and it is unclear how its presence influenced any of the transactions.

This is not sufficient evidence to establish probable cause for the forfeiture of these assets. The mere fact that these assets were purchased with cash does not connect their purchase to the illegal narcotics activity. The fact that some of the cash was carried in paper bags which, at times, were dirty only raises the suspicion that the cash had its origin in illegal activity. The Government has failed to establish a nexus between any of the particular transactions and the illegal narcotics activity described in detail in the Mullins affidavit.

## II.

 Our conclusion that the Government has failed to demonstrate probable cause for the forfeiture of the targeted assets would ordinarily end the case for the Government because probable cause is a prerequisite for the institution of civil forfeiture proceedings. At the time the Government filed its motion for summary judgment in the district court, however, it was not at all clear that the Government could not rely on evidence obtained after the institution of forfeiture proceedings (in this case, the claimants' criminal convictions) to satisfy the probable cause requirement. In fact, at that time, at least two other circuits would have allowed evidence obtained after the forfeiture proceeding had begun to support a finding of probable cause. *See United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 284 (6th Cir.1992) (holding that a district court must assess probable cause at the time of the forfeiture *hearing*, not at the time the action was filed); *United States v. 4492 S. Livonia Road*, 889 F.2d 1258, 1268 (2d Cir.1989) (same). It was only our intervening decision in *$191,910.00*, decided almost a year *after* the district court granted summary judgment to the Government in this case, that the law in this circuit prevented the Government's reliance on evidence obtained after the institution of forfeiture proceedings to satisfy the probable cause requirement. *$191,910.00*, 16 F.3d at 1066–71. The Government has represented to us that it currently possesses evidence that it obtained prior to the institution of the forfeiture proceedings that would in its opinion establish the requisite probable cause, including the necessary nexus to narcotics activity. Therefore, rather than remand this case to the district court with instructions to grant summary judgment to the claimants, we remand this case to the district court to

allow the Government an opportunity to supplement the record for its summary judgment motion to include additional evidence that was in its possession at the time the complaint was filed.

## CONCLUSION

The Government has failed to demonstrate the requisite probable cause for the institution of its forfeiture proceeding because there is a gap in the evidence between the targeted assets and the illegal narcotics activity that cannot be filled by the Mullins affidavit. We therefore REVERSE the district court's grant of summary judgment in favor of the Government and REMAND this case to the district court with instructions to permit the Government an opportunity to supplement the record for its summary judgment motion to include additional evidence in its possession at the time the forfeiture complaint was filed. Because the absence of probable cause is dispositive of this appeal, we do not reach the claimants' alternative argument that the civil forfeiture violated the Excessive Fines Clause of the Eighth Amendment. That issue remains for decision by the district court in the event it finds that probable cause existed at the time the complaint was filed.

REVERSED AND REMANDED.

REINHARDT, Circuit Judge, concurring and dissenting:

I concur in the majority's excellent analysis of the probable cause issue and, indeed, in all of the opinion except for its last two sentences. I dissent only from the majority's failure to consider the claimants' argument that the forfeiture violated the excessive fines clause of the Eighth Amendment.

When one issue is dispositive of an appeal, it is not necessary to reach alternative arguments that might be equally dispositive. That is the rule that the majority purports to apply. In this case, however, while the result the majority reaches is to order a remand for further examination of the probable cause question on the basis of additional evidence to be introduced by the government, the issue it refuses to decide has the *potential* for ending the litigation now. Where such a potential exists, it is unfair to the parties and a waste of judicial resources to order a remand for further district court proceedings that may subsequently result in an unnecessary and time-consuming second appeal.

Here, if we were to rule for the claimants on the merits of their Eighth Amendment argument, the matter would be ended. True, we might rule against them or might even remand for a factual examination by the district court. However, without addressing the question on the merits, we cannot say which result we would reach and therefore cannot know whether we could have disposed of the case finally on this appeal. In my view, if we could, we are obligated to do so.

I believe that my colleagues would agree with me wholeheartedly if this were a criminal case. Were there an argument advanced by a defendant that, if accepted, would result in the permanent dismissal of the criminal charges against him and render further proceedings in the district court unnecessary, we would not remand for further proceedings in the district court on some other argument and refuse to consider what might be the dispositive question. The same should certainly be true in a forfeiture proceeding, particularly where property that deteriorates in usefulness and economic value, such as planes, boats, and cars, is involved and the seizure occurred over eight years earlier.

Because the majority has determined that it will not reach the Eighth Amendment issue, I see little purpose to my doing so. Nevertheless, to emphasize the point that my concern is a jurisprudential one, I might just note for the record that it appears to me that were we to reach the Eighth Amendment claim we would be required to reject it.