UNITED STATES of America,
Plaintiff,

v.

$22,474 IN U.S. CURRENCY,
Defendant.

No. Civ. 98–0525–PHX–EHC.

United States District Court,
D. Arizona.

May 28, 1999.

---

Reid Charles Pixler, U.S. Attorney's Office, Phoenix, AZ, for U.S., plaintiff.

Allen B. Bickart, Allen B. Bickart PC, Phoenix, AZ, for Derek Mahone, defendant.

## MEMORANDUM AND ORDER

CARROLL, District Judge.

This forfeiture action arises out of the Government's seizure of $22,474.00 in U.S. Currency from Claimant Derek Mahone at the Phoenix Sky Harbor International Airport on July 25, 1997. The Government alleges that probable cause exists to believe that the money represents proceeds of trafficking in controlled substances, or was used or intended to be used in exchange for controlled substances. Mahone filed an Answer on May 6, 1998, claiming to be the lawful owner of the $22,474.00 and demanding its return.

Presently before the Court is the Government's motion for summary judgment. The Government asks the Court to rule as a matter of law that probable cause existed to support the seizure of the money. Claimant opposes the motion.

### I. Background

On July 25, 1997, investigators with the Commercial Narcotics Interdiction Unit ("CNIU") of the Phoenix Police Department were contacted by Task Force Agent Mark Kimball of the Dallas/Ft. Worth Airport Group and informed that an indi-

vidual identified as Derek Mahone was en route to Phoenix, Arizona from Cleveland, Ohio via Dallas, Texas on American Airlines Flight 739. Mahone had paid cash for a one-way ticket earlier that same day in Cleveland.

TFA Kimball informed CNIU investigators that a narcotics detection dog in Dallas/Ft. Worth alerted positive to Mahone's checked luggage. Investigators did not have an opportunity to question Mahone prior to the departure of the flight, but were able to observe him sufficiently to provide a description to the Phoenix CNIU.

Upon arriving in Phoenix, Mahone was under surveillance by Detectives Mason and Perreira of the Phoenix Police Department and Special Agent Charles Gulick of the DEA. He was observed standing in line to rent a vehicle from Hertz. Mahone had his wallet in his hand and bulges in three of his pants pockets consistent with large sums of folded currency.

Detective Mason approached Mahone after Mahone claimed his checked baggage. According to Special Agent Gulick, Mahone was visibly nervous during this encounter with Detective Mason. In response to a request for identification, Mahone, who is currently a resident of Georgia, produced an Ohio driver's license.

Mahone initially told Detective Mason that he was traveling to Phoenix to visit friends living in Tempe. He stated that his friends were attending college in Arizona, but was unable to name the school. He also stated that he was returning to Cleveland in three or four days. Mahone said that Juan Rodriguez was the name of one of his friends, but he did not have his address. He was able to provide only a pager number for Rodriguez, which produced a busy signal whenever called.

Detective Mason asked Mahone how much money he was carrying. Mahone first stated that he had approximately $200 on him. After further questioning, he stated that he had additional money with him, but he was not sure of the exact amount. He indicated he was planning to purchase a white Tahoe that he and his wife had seen at a dealership three or four months ago on an earlier trip to Phoenix. Mahone said that the dealership had three new white Tahoes during his previous trip to Phoenix and the three were still available for sale. When asked the amount of money in his possession, he stated that he might have about $10,000 that he had withdrawn from Warner Robins Credit Union in Georgia.

During the course of his conversation with Detective Mason, Plaintiff removed a large sum of currency from his right front pocket and handed it to Detective Mason. A consensual patdown revealed additional currency in his left front and right rear pockets. The currency in Mahone's possession totaled $22,474.

Mahone consented to a dog sniff of the currency. Scout, the narcotics detection dog, alerted positive to both the currency and to the checked luggage. No narcotics or cash were found during an earlier consensual search of the luggage. Similarly, no narcotics were found on Mahone's person. When asked why the narcotics dog might alert positive to his luggage and currency, Mahone explained that a friend who drove him to the airport had smoked marijuana in the car with the windows up.[1]

When initially interviewed, Mahone identified the Warner Robins account as the source of the $22,474. However, when told that investigators were contacting his bank, Mahone said that only $17,000 had come from the bank. He did not at first identify the source for the remaining balance. Bank records confirmed that Mahone's wife, Matilda Mahone, had withdrawn $16,000 from the Warner Robins

---

1. According to Special Agent Gulick's affidavit, the odor was not one ordinarily associated with marijuana, but with cocaine.

account two days prior to Mahone's trip to Phoenix. Mahone later told police that he received the remaining $6,000 from the sale of a vehicle four months earlier.

When asked about employment, Mahone indicated that he was a real estate subcontractor and that he buys homes, fixes them up, and then sells them for profit. When asked how many houses he had bought and sold, he replied that his own home was the first one he had bought and he obtained $45,000 for refinancing it. He also stated that he installed sheet rock as a side job and that he had just finished a sheet rock job. However, he was unable to recall the name or location of his last job site. Special Agent Gulick observed that Mahone's hands were very soft with no calluses and that most of his fingernails were at least one-half inch long.

Special Agent Gulick also questioned Mahone about his story that he came to Phoenix to purchase a Tahoe. When Mahone said that each of the three Tahoes at the dealership sold for $24,000, Special Agent Gulick reminded Mahone that he only had $22,474 with him, a sum that would not be sufficient to cover tax, registration and other fees. Mahone said that he would have his bank arrange for the difference to be paid. He apparently had never considered having a bank arrange to pay the entire purchase price. Mahone's wife, after talking to Mahone, told Special Agent Gulick that Mahone was in Phoenix to buy a "suburban." She could not identify the name of the dealer and further stated that she had never been to Phoenix.

The Government seized the $22,474 pursuant to 21 U.S.C. § 881(a)(6). On September 24, 1997, Mahone filed a Verified Claim and cost bond in the amount of $2,247. The Government commenced this action on March 23, 1998 by filing a Verified Complaint for Forfeiture *in Rem.* Claimant filed a timely answer.

## II. Discussion

### A. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact is one that affects the outcome of the litigation and requires a trial to resolve. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982).

Once the moving party has presented evidence which, if undisputed, would be a basis for a directed verdict at trial, the burden then shifts to the non-moving party to show the existence of a genuine issue for trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party cannot simply rest on the allegations in the complaint, but must offer significant probative evidence tending to support the allegations made in the complaint. *Id.* at 249, 106 S.Ct. 2505. The non-moving party must establish all essential elements of a claim. *Id.* at 251, 106 S.Ct. 2505.

There is no genuine issue for trial unless the non-moving party comes forward with evidence to substantiate the allegations in the complaint. If the evidence is merely colorable or is not sufficiently probative, summary judgment is proper. *Id.* at 249–50, 106 S.Ct. 2505. The Court on a motion for summary judgment must view the evidence before it "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### B. Failure to Comply with Local Rules

The Government filed its motion for summary judgment on January 22, 1999.

On February 3, 1999, Claimant sought additional time in which to file a response. On March 26, 1999, the Court entered an order allowing Claimant until April 9, 1999 to file a response. However, no response was filed within the time allowed. On May 10, 1999, the Government sought entry of summary judgment based on Claimant's failure to respond.

On May 12, 1999, Claimant filed a belated response. Claimant does not explain his failure to file the response within the time allotted for doing so. Claimant has also failed to submit a statement of facts, as required by Local Rule 1.10(1)(2). These would be grounds upon which to summarily grant the Government's motion to dismiss. *See* Local Rule 1.10(i) ("If a motion does not conform in all substantial respects with the requirements of this Rule, or if the opposing party does not serve and file the required answering memoranda ... such noncompliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily.").

### C. Probable Cause

Motions for summary judgment in forfeiture cases must be considered in light of the substantive law governing forfeiture. The defendant funds in this case were seized pursuant to 21 U.S.C. § 881(a)(6), which provides for the forfeiture of seized money if it was furnished or intended to be furnished in exchange for a controlled substance; traceable to such an exchange; or used or intended to be used to facilitate a violation of federal drug laws. *United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir.1994).

Before a forfeiture will lie under § 881, the Government must first establish probable cause to believe that the seized property was connected to an illegal drug transaction. *United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1186 (9th Cir. 1995); *United States v. $5,644,540 in U.S. Currency*, 799 F.2d 1357, 1362 (9th Cir. 1986). If the Government does so, the

burden then shifts to the Claimant to prove by a preponderance of the evidence that the proceeds were not derived from an illegal drug transaction. *Id.*

To meet its probable cause burden, the Government "must show that it had reasonable grounds to believe that the [money] was related to an illegal drug transaction, supported by less than *prima facie* proof but more than mere suspicion." *United States v. U.S. Currency, $30,060*, 39 F.3d 1039, 1041 (9th Cir.1994) (quoting *$5,644,540 in U.S. Currency*, 799 F.2d at 1362); *$191,910.00 in U.S. Currency*, 16 F.3d at 1071. The determination of probable cause is based on "the aggregate of facts" and may be established by circumstantial evidence or even evidence that would otherwise be inadmissible. *United States v. $405,089.23 U.S. Currency*, 122 F.3d 1285, 1289 (9th Cir.1997) (citations omitted).

The Government must have probable cause at the time it files the forfeiture complaint. *Id.* (quoting *$191,910.00*, 16 F.3d at 1071). Whether probable cause exists is ascertained by examining the totality of the circumstances and asking whether sufficient evidence existed, at the time the Government instituted forfeiture proceedings, to believe the property was substantially connected to an illegal transaction. *One 1986 Ford Pickup*, 56 F.3d at 1187.

The undisputed facts in this case show that Mahone paid cash for a one-way ticket to Phoenix, a known source city for drugs. *See United States v. Sokolow*, 490 U.S. 1, 8–9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (short trip to major source city for drugs and method of payment for plane tickets relevant factors in determining reasonable suspicion for Terry stop). *See also United States v. Thomas*, 913 F.2d 1111, 1116 (4th Cir.1990) (arriving at the ticket counter a short time before departure and paying cash for a one-way ticket consistent with drug courier profile). A narcotics

detection dog detected the presence of narcotics on Mahone's checked baggage and also on Mahone's currency. *See U.S. Currency, $30,060,* 39 F.3d at 1042 (positive canine alert is a factor to consider in determining probable cause). Mahone was carrying $22,474.00 in cash on his person. *See United States v.. $215,300 U.S. Currency,* 882 F.2d 417, 419 (9th Cir.1989) (per curiam) ("[c]arrying a large sum of cash is 'strong evidence' of [a connection to illegal drug activity]") (quoting *United States v. U.S. Currency $83,310.78,* 851 F.2d 1231, 1236 (9th Cir.1988)). Mahone offered conflicting statements regarding how much money he was carrying, the origin of that money and the purpose for his visit to Phoenix. *$191,910 U.S. Currency,* 16 F.3d at 1072 (discrepancies in story may be a factor to consider in determining probable cause). In addition, Mahone's story also conflicted with statements made by his wife and he was unable to answer a number of questions that he should have had no trouble answering (the location of his last job, the address for the friend he was visiting in Tempe, and the name and location of the dealership). These factors are indicative of probable cause.

The Court recognizes that each of the above factors, standing alone, would arguably be insufficient to satisfy probable cause. For example, possession of a large sum of money does not establish probable cause to believe that this money was derived from a drug-related transaction. *See United States v. Padilla,* 888 F.2d 642, 646 (9th Cir.1989) (mere existence of a large amount of cash is insufficient; there must be additional persuasive circumstantial evidence of an illegal transaction). *See also $191,910 in U.S. Currency,* 16 F.3d at 1072 ("any amount of money, standing alone, would probably be insufficient to establish probable cause for forfeiture"). However, because law-abiding individuals do not usually carry $22,474 in cash, this is **"strong evidence** of some relationship with illegal

drugs." *United States v. $86,020 in U.S. Currency,* 1 F.Supp.2d 1034, 1037 (D.Ariz. 1997) (citing *United States v. $2,500 in U.S. Currency,* 689 F.2d 10, 16 (2d Cir. 1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984), among other cases) (emphasis in original). Similarly, detection of cocaine residue on the $22,474 is not sufficient to satisfy probable cause, because much of the currency currently in circulation in the United States is contaminated with drug residue. *Id.* at 1037 (as much as 75% to 90% of U.S. Currency may contain cocaine residue).[2] When aggregated, however, these facts constitute credible evidence of probable cause.

The Court concludes, given the totality of circumstances, that the aggregate of undisputed facts establish that probable cause existed at the time the Government instituted forfeiture proceedings to believe a substantial connection existed between the $22,474 and illegal drug activity. The Government has shown by reliable evidence that the money was exchanged for or intended to be exchanged for controlled substances.

### D. Claimant's Burden

Because probable cause exists to believe that the defendant money is connected to drug trafficking, the burden shifts to Claimant to show by a preponderance of the evidence that the funds are not connected to drug activities. *$5,644,540,* 799 F.2d at 1362. Claimant has offered no such evidence. The only evidence offered is an affidavit of a former police officer and undercover detective. This affidavit unsuccessfully attempts to create a question of fact as to the existence of probable cause. Having reviewed the document, the Court finds that it does not raise a genuine issue of material fact. Claimant has failed to meet his burden of showing by a preponderance of the evidence that the currency was not involved with illegal drug transactions.

2. The Court notes, however, that narcotic detection dogs are trained not to detect such "ordinary" amounts of cocaine residue. *Plaintiff's Statement of Facts,* ¶ 22, 25.

## III. Conclusion

Based upon the aggregate of undisputed facts in the record, the Court finds that the Government has demonstrated that probable cause existed to believe the $22,-474 was related to illegal drug activity. Because no genuine issue of material fact exists on the question of probable cause and Claimant failed to meet his burden of proving a lawful origin or objective of the currency, summary judgment is appropriate.

Accordingly,

**IT IS ORDERED** granting Plaintiff's motion for summary judgment. (Dkt.16). The Clerk of Court is directed to enter judgment for Plaintiff and against Defendant and Claimant.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's second motion for summary judgment. (Dkt.22).