**UNITED STATES of America**

v.

**$97,667.00 IN U.S. CURRENCY.**

**No. CV 07–1048 DSF (MANx).**

United States District Court,
C.D. California.

Nov. 5, 2007.

Lisabeth Shiner, AUSA, Asset Forfeiture Section, Los Angeles, CA, for United States of America.

**Proceedings:** (IN CHAMBERS) Order DENYING Claimants' Motion for Judgment on the Pleadings

DALE S. FISCHER, District Judge.

Plaintiff seeks forfeiture of $97,667.00 in U.S. currency (the "Currency") pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), alleging that the Currency bears a substantial connection to illegal drug activity.

This matter is before the Court on Claimants' Motion for Judgment on the Pleadings ("Motion"). Claimants argue that Plaintiff has failed to allege a sufficient connection between the Currency and any illegal activity. He also argues that the Court lacks subject matter jurisdiction because Plaintiff has not alleged sufficient facts to demonstrate probable cause for the seizure.

Having considered the submissions of the parties and having heard oral argument, the Court DENIES Claimants' Motion.

## I. FACTS[1]

In June 2006, special agents from the Drug Enforcement Administration ("DEA") received information from the Anaheim Police Department ("Anaheim PD") that an Anaheim PD confidential source ("CS") was in contact with a narcotics trafficker in Orange County using the name "Yucca" and telephone number (213) 663–6487. (Compl.¶ 9.) Anaheim PD officers subsequently identified "Yucca" as Claimant Manuel De Atocha Carrillo–Lara ("Manuel"), and were able to corroborate information provided by the CS. (*Id.*) A consensually monitored call occurred in which Manuel discussed the sale of approximately five pounds of methamphetamine to the CS. (*Id.*) During the ensuing investigation of Manuel, Anaheim PD officers identified a garage located in Orange, California that Manuel was using to store illegal narcotics. (*Id.*)

From approximately June 21, 2006 through September 25, 2006, Anaheim PD officers conducted periodic physical surveillance of Manuel. (*Id.*¶ 10.) On September 9, 2006, the DEA Orange County Resident Office obtained court authorization to conduct the initial interception of wire communications for telephone numbers (213) 663–6487 ("Line # 1") and (714) 612–5659 ("Line # 2"), both of which were being used by Manuel. (*Id.*) On September 25, 2006, at approximately 10:56 a.m., Angel Carrillo–Lara ("Angel"), using Line # 1, spoke to Manuel, using Line # 2. (*Id.* ¶ 11.) Manuel asked Angel what time Angel would be leaving, and Angel said, "3 or 4." (*Id.*) Manuel told Angel to bring $20,000. (*Id.*)

Based on this intercepted telephone call, Anaheim PD officers conducted surveillance at a residence on Zane Street in Los Angeles, California (the "Zane Street Residence"), that was being used by Manuel and others. (*Id.* ¶ 12.) At approximately 4:37 p.m., Manuel, using Line # 2, spoke to Angel, using Line # 1. (*Id.* ¶ 13.) Manuel

---

1. The Court assumes the truth of Plaintiff's allegations for the purpose of this Motion only.

told Angel to bring "the box." (*Id.*) At approximately 9:32 p.m., Manuel, using Line # 2, spoke to an individual named "Ada." (*Id.* ¶ 14.) When Manuel asked whether things were "calm," Ada responded affirmatively and said that all the "papers" were ready. (*Id.*) Manuel said that he would be in Las Vegas the following week. (*Id.*) During the conversation, Angel arrived at Manuel's residence. (*Id.*) Shortly thereafter, Manuel told Ada he would call her back because the police were there. (*Id.*)

At approximately 9:30 p.m., an Anaheim PD officer observed a silver Honda Civic, registered to Manuel Carrillo, arrive at the Zane Street Residence. (*Id.* ¶ 15.) On previous occasions, Manuel had been observed driving the vehicle. (*Id.*) Angel and a female passenger named Raquel Mukuel exited the vehicle empty-handed and walked into the residence. (*Id.*) Anaheim PD officers then approached the residence wearing raid gear. (*Id.*) A police officer identified himself and asked to speak with Manuel. (*Id.* ¶ 16.) When Manuel came to the door, the officer asked Manuel for permission to enter the residence, which Manuel gave. (*Id.*)

Through a certified Spanish interpreter, officers asked Manuel if there were narcotics or large sums of money inside the house or in vehicles that belonged to him, and if the residence was being used for narcotics trafficking. (*Id.* ¶ 17.) Manuel said that his brother, Angel, had just arrived from Las Vegas in a silver Honda, that he had asked Angel to bring him his money, and that the money would be found inside a safe in the back of the Honda. (*Id.* ¶ 17.) Manuel told the officers that the money in the safe was his savings of many years. (*Id.* ¶ 18.) He stated that he typically cashed his paychecks and that he had amassed a large quantity of hundred dollar bills. (*Id.*) He said that he was a part-owner in a sushi restaurant, and that

he also worked as a valet parking attendant. (*Id.*)

Manuel consented to the search of the Honda and told the officers that the keys to the safe were inside the house. (*Id.*) Angel also gave the police permission to search his person. (*Id.* ¶ 19.) On Angel's person, the police found a cellular phone, which Angel stated belonged to Manuel, and $1,507.00 in U.S. currency. (*Id.*) Angel also consented to a search of the Honda. (*Id.*)

Manuel retrieved a set of keys for the safe, signed an Anaheim PD consent to search form for the Honda, and accompanied Anaheim PD officers to the trunk of the Honda. (*Id.* ¶ 21.) Inside the trunk of the Honda, officers found a safe containing cash bundles totaling $74,860.00 in U.S. currency. (*Id.*) They also found a purse containing $20,000.00 in U.S. currency. (*Id.*) Manuel said that all of the cash found in the vehicle belonged to him. (*Id.*) Anaheim PD seized all of the currency. (*Id.*) Upon a further search of the Honda, an officer found a blue note pad which, based on the officer's training and experience, appeared to contain "pay/owe" notations. (*Id.*)

Angel said that Manuel had given him the safe about a month earlier and asked him to take care of it. (*Id.* ¶ 22.) He said that he knew it contained a large sum of money, but he did not know how much. (*Id.*) He said that he did not know how Manuel got the money or what Manuel did for a living. (*Id.*) He also denied knowledge of any narcotics-related activities or Manuel's involvement in such activities. (*Id.*) He further stated that the $1,507.00 found in his wallet belonged to Manuel. (*Id.*)

Based on the seizure of the currency, the interviews of Manuel and Angel, the seized "pay/owe" notations, and other evidence obtained by Anaheim PD in their

investigation, Manuel and Angel were arrested for violation of California Health & Safety Code § 11370.9, for possession of narcotics proceeds in excess of $25,000. (*Id.* ¶ 23.) At the Anaheim Detention Facility, Angel signed a "Disclaimer of Ownership of Currency" form in Spanish and stated that the money belonged to Manuel. (*Id.* ¶ 24.) Manuel refused to sign the form, stating, "It is my money. It is my money from work." (*Id.*) During the search incident to Manuel's arrest, officers found $1,300.00 on Manuel's person, which they also seized. (*Id.*)

At the Anaheim Detention Facility, a K-9 officer directed his narcotics-trained canine "Blitz" to conduct a sniff of the currency seized during the investigation. (*Id.* ¶ 25.) The K-9 officer placed the defendant currency in a brown paper bag untainted by the presence of narcotics or narcotics residue. (*Id.*) Another officer hid the bag among other items, also untainted by the presence of narcotics or residue, inside a cubicle in the detective bureau. (*Id.*) Neither the K-9 officer nor Blitz knew where the bag was hidden. (*Id.*) When the K-9 officer gave Blitz the command to search, the dog alerted to the brown paper bag located near a desk inside the cubicle by scratching the bag and retrieving it with its teeth. (*Id.*)

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is proper when taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). It must appear beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,

132 F.3d 526, 529 (9th Cir.1997). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion. *E.g., Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989). Thus, dismissal is appropriate only if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Allegations by the non-moving party must be accepted as true, while allegations of the moving party that have been denied must be deemed false for the purpose of the motion. *Hal Roach Studios, Inc. v. Richard Feiner and Company, Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). The court is not required to accept as true, however, "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged," or "merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir.2004) (internal quotation marks and citations omitted) (reviewing ruling under Rule 12(b)(6)).

As discussed in more detail below, pleading requirements in civil forfeiture actions are governed by the Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, 114 Stat. 202 (codified primarily at 18 U.S.C. § 983), and the Supplemental Rules for Certain Admiralty and Maritime Claims.

## III. DISCUSSION

### A. The Court Has Subject Matter Jurisdiction Over Plaintiff's Claim

Claimants argue that this Court lacks subject matter jurisdiction over Plaintiff's

claim because Plaintiff has not alleged facts sufficient to establish probable cause for seizure of the Currency. In their Reply, Claimants also argue for the first time that Plaintiff's insufficient allegation of a nexus between the Currency and illegal activity deprives Plaintiff of standing. These arguments are without merit.

■ Claimants argue that forfeiture is not proper where the government cannot establish probable cause for seizing property at the time it was seized and for forfeiture at the time a forfeiture action is commenced. This proposition, *if it were* true, would go to the merits of Plaintiff's claim, not to this Court's jurisdiction to hear the claim. None of the cases cited by Claimants hold that a showing of probable cause is a prerequisite to an exercise of subject matter jurisdiction.[2] Indeed, Claimants' cases make clear that lack of probable cause does not divest courts of subject matter jurisdiction. For example, in *United States v. Device More or Less Labeled Theramatic,* 641 F.2d 1289 (9th Cir.1981), the reviewing court remanded for further proceedings after finding that the government had not demonstrated probable cause for a seizure. If subject matter jurisdiction were lacking, the only possible outcome would be dismissal. *See* Fed.R.Civ.P. 12(h)(3). Likewise, in *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051 (9th Cir.1994), the court upheld summary judgment for the claimant on the basis of a lack of probable cause for forfeiture, a ruling that the district court would have no power to enter if subject matter jurisdiction were lacking. In addition, as discussed below, the existence of probable cause for seizure or forfeiture of goods at the outset of litigation is no longer a prerequisite to maintaining a forfeiture action.

The Court need not consider Claimants' standing argument, which was raised for the first time in his Reply. *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir.2007). In any event, the argument that Plaintiff lacks standing because it has not sufficiently established a connection between the Currency and illegal activity again confuses the merits of Plaintiff's case with this Court's ability to adjudicate the controversy before it. Claimants argue that if there is no nexus between the Currency and illegal activity, then Plaintiff's "injury [is not] fairly traceable to the challenged action of the defendant" so as to confer standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). If Claimants' argument were correct, standing would be in question in any case in which liability was challenged. Here, Plaintiff's claim is directly traceable to Claimants' alleged conduct. Whether Plaintiff can prove that Claimants' conduct is sufficient to impose forfeiture is the essence of the "case or controversy" presented here. Plaintiff has standing to bring its claim.

### B. Plaintiff Has Adequately Pleaded Its Forfeiture Claim

### 1. Plaintiff's Complaint Need Not Establish That Probable Cause Existed at the Outset of Litigation

The procedural requirements for a civil forfeiture action are governed by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202 (codified primarily at 18 U.S.C. § 983), and the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). On December 1, 2006, Rule G of the Supplemental Rules was

---

**2.** The only case cited by Claimant that even mentions subject matter jurisdiction holds that failure to timely *serve* a forfeiture warrant deprives the court of jurisdiction. *See U.S. v.*

*Funds Representing Proceeds of Drug Trafficking in Amount of $75,868.62,* 52 F.Supp.2d 1160, 1170 (C.D.Cal.1999). This case has no application here.

adopted, governing any "forfeiture action in rem arising from a federal statute." It provides that in a civil forfeiture action:

> The complaint must:
>
> (a) be verified;
>
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
>
> (c) describe the property with reasonable particularity;
>
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
>
> (e) identify the statute under which the forfeiture action is brought; and
>
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Rule G(2).

Claimants do not assert that Plaintiff's Complaint fails to meet the requirements of Rule G(2)(a)-(e). Rather, Claimants argue that Plaintiff's Complaint fails, under Rule G(2)(f), to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Initially, Claimants argue that, under this standard, Plaintiff's Complaint must demonstrate the existence of probable cause for forfeiture at the commencement of the action, because part of Plaintiff's burden of proof at trial is demonstrating that probable cause for forfeiture existed at the commencement of the action. (Reply 2–4.) This argument is unavailing.

18 U.S.C. § 983(c) establishes the government's current burden of proof in civil forfeiture cases:

> In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property—
>
> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
>
> (2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
>
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

Neither Rule G nor 18 U.S.C. § 983(c)(1) mentions "probable cause" at all, let alone any burden to establish probable cause at the commencement of suit.

Claimants rely on cases interpreting 19 U.S.C. § 1615, the pre-CAFRA burden shifting statute, in support of his claim that Plaintiff bears the burden at trial of demonstrating that probable cause for forfeiture existed at the commencement of this action. *See United States v. $191,910 in U.S. Currency,* 16 F.3d 1051, 1066 (9th Cir.1994); *United States v. $734,578.82 in U.S. Currency,* 286 F.3d 641, 654 (3d Cir. 2002).[3] Prior to CAFRA's enactment, the

---

**3.** Claimants also argue that forfeiture would be unconstitutional if the Currency were seized without probable cause. (Mot.16.) However, "the mere fact of the illegal seizure, standing alone, does not immunize the goods from forfeiture." *United States v. One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538,* 708 F.2d 444, 450 (9th Cir.

1983) (internal quotation omitted); *see also* Rule G(8) ("If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence. Suppression does not affect forfeiture of the property based on independently derived evidence.")

burden of proof in forfeiture actions was governed by 19 U.S.C. § 1615, which provides that "the burden of proof shall lie upon [the] claimant; ... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court...." This statute was construed as imposing on the government the burden to demonstrate that probable cause for forfeiture existed at the outset of litigation. *See $191,910 in U.S. Currency,* 16 F.3d at 1071. Claimants rely on cases granting summary judgment to claimants where the government was unable to carry this initial burden. *See, e.g., id.*

CAFRA supersedes this provision, imposing on the government the burden "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *see United States v. Mondragon,* 313 F.3d 862, 865 (4th Cir.2002). Probable cause plays no part in this new standard. Moreover, 18 U.S.C. § 983 explicitly acknowledges that the government's burden can be satisfied by evidence acquired after institution of a forfeiture action. It states that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property," 18 U.S.C. § 983(a)(3)(D), and that "the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 U.S.C.

§ 983(c)(2). These provisions are inconsistent with the rule relied on by Claimants, which barred use of evidence acquired after filing of a complaint.[4] *See $191,910,* 16 F.3d at 1071.

■] Plaintiff's Complaint is sufficient if it "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial"—i.e., "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." Rule G; 18 U.S.C. § 983(c)(1). Plaintiff need not allege sufficient facts to demonstrate that probable cause for forfeiture existed at the initiation of litigation.

## 2. Plaintiff's Complaint Alleges Sufficient Facts

Plaintiff seeks forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). Under 21 U.S.C. § 881(a)(6), seized money is subject to forfeiture if it is "(1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws." *United States v. Currency, U.S. $42,500.00,* 283 F.3d 977, 979–80 (9th Cir. 2002). 18 U.S.C. § 981(a)(1)(C) provides for forfeiture of, among other things, money "which constitutes or is derived from proceeds traceable" to illegal drug trafficking. Claimants' assertion that the Currency may only be forfeited if it constitutes

---

4. Claimants argue that the burden of demonstrating probable cause at the initiation of the lawsuit derived from 19 U.S.C. § 1615 has independent force, and survives despite the institution of a new and incompatible burden-shifting statute. However, the plain language of 19 U.S.C. § 1615—"the burden of proof shall lie upon [the] claimant; ... *Provided,* That probable cause shall be first shown"— makes clear that a showing of probable cause

is relevant only insofar as it shifts the burden to the claimant. Probable cause plays no part in the current regime, under which the government retains the burden of proof. The Court will not consider Claimants' legislative history to the contrary, because the language of the relevant *statutes is not ambiguous. See United States v. McNeil,* 362 F.3d 570, 574 (9th Cir.2004).

"proceeds" from a drug transaction is thus incorrect.

▉ Plaintiff's Complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to show that the Currency was connected to illegal drug activity. Rule G; 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). In assessing whether Plaintiff has met this burden, the Court looks to the totality of the circumstances. *See $42,500.00*, 283 F.3d at 980; *Mondragon*, 313 F.3d at 866. The Court finds the Complaint's factual allegations are sufficient to meet Plaintiff's burden.

Anaheim PD seized $97,667.00 in cash belonging to Manuel. (Compl.¶ 5.) "[P]ossession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs." *Id.* at 981. A large amount of money standing alone, however, is insufficient to establish a link to illegal drug activity. *Id.* Here, other factors indicate a substantial connection between the Currency and illegal drug activity. Most importantly, the allegations, taken as true, establish that Manuel had recently been involved in a drug transaction prior to the seizure and likely continued to be involved in drug trade. In June 2006, DEA special agents received information from Anaheim PD that an Anaheim PD confidential source was in contact with a narcotics traf-

ficker in Orange County using the name "Yucca." (*Id.* ¶ 9.) Anaheim PD officers subsequently identified "Yucca" as Manuel and were able to corroborate information provided by the CS through a consensually monitored call in which Manuel discussed the sale of approximately five pounds of methamphetamine to the CS.[5] (*Id.*) During the ensuing investigation of Manuel, Anaheim PD officers identified a garage located in Orange, California that Manuel was using to store illegal narcotics. (*Id.*)

Claimants assert that the phone call between Manuel and the CS regarded an unconsummated drug sale, and emphasizes the three-month gap between the monitored phone call and the seizure of the Currency. However, that Manuel was discussing the sale of five pounds of methamphetamine and that police officers later identified a garage in which Manuel was storing illegal narcotics indicate that Manuel was engaged in selling illegal drugs. These facts also suggest that Manuel's drug dealing was an ongoing concern. Here, the temporal connection between known drug involvement and seizure of the Currency is sufficient to support a reasonable belief that Plaintiff will be able to show that the Currency is more likely than not substantially connected to illegal drug activity. Anaheim PD's discovery of a blue note pad which, based on the officer's training and experience, appeared to contain "pay/owe" notations further supports the inference that the Currency was related to illegal drug transactions.[6]

That a narcotics-trained dog, "Blitz," alerted to a brown paper bag filled with the Currency may or may not be probative

---

**5.** Plaintiff's conclusory assertion that it otherwise corroborated information provided by the CS does not meet the particularity requirements of Rule G, and the Court gives it no weight.

**6.** Claimants' evidentiary objection to the admissibility of the opinion of an Anaheim PD officer regarding the content of the blue notebook (Mot.14) has no bearing on a motion for judgment on the pleadings, in which allegations of the Complaint are accepted as true.

# 1254

of a substantial connection between the Currency and illegal drug activity. An alert by a dog trained to alert to any presence of drugs has little probative value, because a large percentage of money in general circulation is tainted with drugs. *See United States v. $22,474.00 in U.S. Currency,* 246 F.3d 1212, 1216 (9th Cir. 2001). An alert by a dog trained to alert only to quickly-dissipating drug residue can be highly probative, however. *Id.* Because Plaintiff does not allege Blitz's level of training, the Court gives little weight to the alert. Nonetheless, the other facts described above are sufficient to meet Plaintiff's burden at the pleading stage.

Claimants' reliance on *United States v. $405,089.23 U.S. Currency,* 122 F.3d 1285 (9th Cir.1997), is misplaced. In *$405,089.23,* the court reversed summary judgment for the government in a forfeiture case, finding that the government had not demonstrated "a sufficient connection between the detailed narcotics activity and the particular assets targeted by the Government's forfeiture proceeding." 122 F.3d at 1290–91. Here, the blue "pay/owe" notebook found with the Currency, together with direct evidence of drug dealing, establish a sufficient connection between the Currency and illegal drug activity to meet Plaintiff's burden. This is particularly true at this stage of litigation, where Plaintiff need only support a reasonable belief that it can meet its burden at trial.

## III. CONCLUSION

For the foregoing reasons, Claimants' Motion for Judgment on the Pleadings is DENIED.

IT IS SO ORDERED.