UNITED STATES of America,
Plaintiff–Appellee,

v.

$22,474.00 IN U.S. CURRENCY,
Defendant,

and

Derek Mahone, Claimant–Appellant.

No. 99–16611.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 2000.

Filed April 18, 2001

Allen B. Bickart, Phoenix, Arizona, for the appellant.

Reid C. Pixler, Assistant United States Attorney, Phoenix, Arizona, for the appellee.

Before: THOMPSON, O'SCANNLAIN, and TASHIMA, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Derek Mahone appeals the district court's summary judgment forfeiting $22,474.00 to the United States government pursuant to 21 U.S.C. § 881(a)(6), which statute permits the government to seize and forfeit money exchanged for or intended to be exchanged for illegal controlled substances. Mahone contends the government failed to establish a connection between the $22,474.00 and illegal drug activity. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

On July 25, 1997, a task force agent of the Dallas/Ft. Worth Airport Group in-

formed Sergeant Robert Hunsick of the Phoenix Police Department Commercial Narcotics Interdiction Unit that Mahone was traveling from Cleveland, Ohio to Phoenix, Arizona via Dallas, Texas on a one-way ticket that had been purchased earlier that day with cash. In Dallas, a certified drug detection dog made a positive alert to Mahone's checked luggage, but the officers were unable to locate Mahone before his flight, with Mahone and his luggage on board, departed for Phoenix.

Based on the tip, several officers, including Special Agent Charles Gulick, Detective Craig Mason and Detective Ronald Perreira, initiated surveillance of Mahone when he arrived in Phoenix. While Mahone was waiting in line to rent a car, Agent Gulick observed that three of Mahone's pants pockets contained square bulges which were consistent with large sums of folded currency. Detective Mason approached Mahone and asked for his identification. Mahone presented an Ohio driver's license, but told Detective Mason that he lived in Georgia. Mahone, who appeared nervous and whose hands were shaking, explained that he was traveling to Phoenix to visit some friends living in nearby Tempe, Arizona. Although Mahone said his friends were going to college, he was unable to provide the name of the college. After further questioning, Mahone told Detective Mason he was visiting Juan Rodriguez, whom Mahone had met in a bar in Ohio. Mahone said he did not have an address for Rodriguez but intended to reach him by calling his pager number. Detective Mason and Agent Gulick attempted to reach Rodriguez several times using the pager number, but received a busy signal.

Mahone told the officers he was a real estate subcontractor who bought houses, fixed them up, and sold them for a profit.

Mahone said his own home was the first house he had bought for this purpose. Mahone claimed to have obtained $45,000.00 in cash from refinancing it. Mahone told the officers that he often installed sheet rock to earn additional money and that he had completed a job just before traveling to Cleveland. When Agent Gulick pointed out that Mahone's hands appeared to be soft, without calluses, and his nails were at least one-half inch long, Mahone replied that work had been slow and the jobs were small. Mahone was unable to remember the name or location of his last job.

Mahone initially told Detective Mason that he was carrying about $200.00 in cash. Upon further questioning, Mahone said he had approximately $10,000.00 in cash. He explained he was returning to Phoenix to buy a white Tahoe sport utility vehicle he and his wife had seen when visiting Phoenix several months earlier. Mahone said he had seen three white Tahoes for sale at a dealership on "Shayden" road. Because the officers knew there was no "Shayden" road in the Phoenix area, they asked Mahone if he meant "South Hayden Road," but Mahone said no. Mahone said the dealership was offering three new white Tahoes for $24,000.00 apiece. Despite the lapse of time since Mahone's last alleged visit to Phoenix, Mahone told the officers he knew the vehicles were still available for sale.

During his questioning, Mahone withdrew a large sum of money from his right front pants pocket and handed it to Detective Mason. Mahone consented to a pat-down search, and more money was found in his right front and right rear pants pockets. Sergeant Hunsick's field count showed that, in all, Mahone was carrying $22,474.00 in currency. When Agent Gulick pointed out that Mahone did not have enough cash to cover the $24,000.00 purchase price and the additional costs associated with transporting the Tahoe automobile back to Georgia, Mahone explained he would contact his bank to arrange for the remaining balance to be paid. When Agent Gulick questioned why Mahone had not arranged for his bank to pay for the entire amount, Mahone stated that black people from Cleveland do not do business that way, but that he would consider doing so in the future.

With Mahone's consent, Detective Perreira conducted an inspection of the currency using a certified drug detection dog. The dog alerted positively to both the currency obtained from Mahone's pockets and to Mahone's checked luggage, but not to the clothing Mahone was wearing. Mahone explained that the person who drove him to the airport was smoking marijuana in the car with the windows closed. Neither Agent Gulick nor Detective Mason could detect the odor of marijuana emanating from the currency, the checked luggage or Mahone's clothing. Agent Gulick, however, detected a sweet odor, which he associated with cocaine, coming from the currency and the checked luggage. Mahone also told Detective Mason that he had been convicted of cocaine trafficking in Ohio. Detective Mason confirmed that conviction occurred in 1991. Mahone consented to a search of his checked luggage, but no additional cash or contraband was found.

While detaining Mahone, Agent Gulick called Mahone's residence and spoke with Mahone's sister-in-law. She said she had been living in Mahone's house for most of the summer and was unaware that Mahone had traveled to Phoenix. In response to questioning, she told Agent Gulick that Mahone was a real estate agent and that he did not do any construction work. She said that Mahone worked out of the house and did not have a place of employment.

Detective Mason contacted Mahone's wife at her place of employment. She said Mahone had flown to Phoenix to buy a Suburban automobile, but she was unable to identify the particular dealership. She denied having ever been to Phoenix.

Agent Gulick seized the $22,474.00 in currency from Mahone, informing him that the money was being seized by the United States government for forfeiture under 21 U.S.C. § 881, as money connected with illegal drug activity. Mahone was not arrested or charged with any crime. The government, however, brought this action to forfeit the $22,474.00 pursuant to 21 U.S.C. § 881(a)(6).

After discovery, the government moved for summary judgment. The district court determined that the undisputed facts established that Mahone: (1) paid cash for a one-way, same day ticket to Phoenix, a known source city for drugs; (2) was carrying a large sum of cash on his person; (3) offered conflicting statements regarding the amount of money he was carrying, the origin of the money, and the purpose of his visit to Phoenix; (4) gave an explanation for the purpose of his visit which conflicted with the statement made by his wife; and (5) was unable to answer several easy questions that one would reasonably expect a person to be able to answer, such as the location of the job he had completed just before flying to Phoenix, the address of the person he was visiting in Tempe, and the name and location of the dealership where he intended to buy the Tahoe automobile he said he had come to Phoenix to buy, using the $22,474.00 in cash he was carrying.

The district court noted that none of these factors standing alone, nor the mere fact that the drug detection dog alerted to the money Mahone was carrying, was sufficient to establish probable cause to believe that the currency was connected with illegal drug activity. However, the district

court concluded "given the totality of the circumstances, that the aggregate of undisputed facts establish that probable cause existed at the time the government instituted forfeiture proceedings to believe a substantial connection existed between the $22,474.00 and illegal drug activity." *See United States v. $405,089.23 in U.S. Currency,* 122 F.3d 1285, 1289 (9th Cir.1997) (explaining the determination of probable cause is based on the aggregate of the facts and may be established by circumstantial evidence and otherwise inadmissible hearsay). Finding reasonable grounds to believe that the $22,474.00 was related to illegal drug activity, and that Mahone had failed to offer any evidence to the contrary, the district court granted summary judgment in favor of the government. This appeal followed.

## ANALYSIS

Mahone argues the district court's summary judgment was improper because the court failed to consider the evidence in the light most favorable to him. He further contends that he offered "sufficient evidence as to the legitimacy of the source of funds as being non-drug related." Finally, he contends the district court erroneously failed to address his Eighth Amendment argument regarding the forfeiture.

■ Under 21 U.S.C. § 881(a)(6), seized money is subject to forfeiture if it is "(1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws." *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1071 (9th Cir.1994). To meet its initial burden in a forfeiture proceeding, the government must establish probable cause. To do so, the government must show by some credible evidence that it had "reasonable grounds to believe that the

[money] was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion." *United States v. $30,060.00 in U.S. Currency,* 39 F.3d 1039, 1041 (9th Cir.1994) (brackets in original) (citation and internal quotation marks omitted); *United States v. Dickerson,* 873 F.2d 1181, 1184 (9th Cir.1988).

■ Mahone contends that an affidavit offered by his expert, Jay Pirouznia, was sufficient to establish a genuine issue of material fact on the issue of probable cause. Pirouznia had served as a police officer for twenty years before retiring. He had experience dealing with narcotics cases and canine training. In his affidavit, he reviewed all of the government's evidence in support of its motion for summary judgment, and proffered the opinion that probable cause to seize the $22,474.00 was lacking. In particular, he discounted the probative value of the drug detection dog's alert to the currency.

We have found a drug detection dog's positive alert to a large sum of money to be "strong evidence" in determining probable cause. *United States v. $215,300 U.S. Currency,* 882 F.2d 417, 419 (9th Cir.1989). However, more recently, we have indicated a reluctance to rely too heavily upon drug detection dog alerts to contaminated money because of evidence that there is widespread contamination of currency in circulation in certain areas of the country. *$30,060,* 39 F.3d at 1043. In *$30,060,* the claimant offered evidence, uncontroverted by the government, that more than seventy-five percent of all circulated currency in Los Angeles is contaminated with residue from cocaine or other controlled substances. *Id.* at 1042. Because of this uncontested evidence, we gave little weight to the drug detection dog's alert to the money in that case. *See id.*

Although it is not unlikely the percentage of drug-tainted money in circulation in Phoenix is as high as it is in Los Angeles, the evidence in this case regarding the drug detection dog's alert differs from the dog alert in *$30,060.* Here, the government presented evidence that the dog would not alert to cocaine residue found on currency in general circulation. Rather, the dog was trained to, and would only, alert to the odor of a chemical by-product of cocaine called methyl benzoate. Moreover, the government provided evidence that unless the currency Mahone was carrying had recently been in the proximity of cocaine, the detection dog would not have alerted to it. That evidence was not disputed.

■ In addition to the undisputed evidence of the sophisticated dog sniff, there are numerous other undisputed facts which, in the aggregate, establish probable cause to believe that the money seized from Mahone was to be (or had been) used in drug-related activity. Mahone purchased with cash, a same day one-way ticket to Phoenix, a known source city for drugs. This is consistent with a drug courier profile. *See United States v. $129,727.00 in U.S. Currency,* 129 F.3d 486, 490 (9th Cir.1997). While drug courier profiling alone is insufficient to establish probable cause, courts have used it as a factor in considering the totality of the circumstances. *See id.* at 490–491; *$215,300,* 882 F.2d at 419 (finding claimant's Miami destination, a "well know center of illegal drug activity," was probative of probable cause when combined with other circumstances.).

Mahone was carrying a substantial sum of cash. *See United States v. $83,310.78 U.S. Currency,* 851 F.2d 1231, 1236 (9th Cir.1988) (carrying a large sum of cash is "strong evidence" of a connection to illegal drug activity).

Mahone does not deny that he gave conflicting statements regarding the

amount of money he was carrying, the origin of the money, and his reasons for visiting Phoenix. He was unable to answer simple questions about his last job, the address of the person he claimed to be visiting, and the name or address of the dealership from which he intended to buy the Tahoe automobile. Both his wife and sister-in-law contradicted his proffered reasons for visiting Phoenix. Mahone's inconsistent statements about the money and his reasons for being in Phoenix tended to support an inference that the money was drug-related. *See $215,300,* 882 F.2d at 419 (attempts to avoid detection by concealing or lying about the money supported an inference that the money was drug-related.); *$191,910,* 16 F.3d at 1072 (discrepancies in story may be factors to consider in determining probable cause).

The foregoing incriminating circumstances suggest that Mahone was involved in some illegal activity. However, there must be a nexus specifically linking the incriminating circumstances to illegal drugs. *See $129,727,* 129 F.3d at 490–491. In this case, there is.

The sophisticated dog sniff, and more important, Mahone's admission that he had a prior conviction for cocaine trafficking provide the necessary link. Evidence of a prior drug conviction is probative of probable cause. *See $83,310.78,* 851 F.2d at 1236 (evidence of prior drug convictions demonstrated more than mere suspicion that money was part of an illegal drug transaction).

In support of his argument that the government failed to establish probable cause, Mahone relies on *United States v. $49,576.00 in U.S. Currency,* 116 F.3d 425 (9th Cir.1997). In that case, a drug detection dog alerted to currency, the claimant fit a drug courier profile, he gave evasive and dishonest answers to questions by law enforcement officers, and he had once been detained, but not charged, in connec-

tion with a drug-related crime. *Id.* at 427. We held that although the circumstances established probable cause to believe that the claimant was involved in some illegal activity, there was no evidence connecting that activity with narcotics. *Id.* at 428. The present case is different. Here, Mahone admitted he had been *convicted* of trafficking in cocaine. This was sufficient, when added to the sophisticated dog sniff and all of the other factors, to tip the scales in favor of establishing probable cause.

Mahone also relies on *$30,060,* 39 F.3d at 1041. There, a drug detection dog alerted to the scent of a controlled substance on currency, a large amount of currency was seized, the currency was packaged in a plastic bag and arranged in $1,000 stacks bound by rubber bands, and the claimant made false statements regarding the currency's source and his employment record. We held that although these circumstances would support a suspicion of illegal activity, they did not provide a sufficient link to illegal drug activity. In contrast, in the present case there are the additional factors of the undisputed evidence of the sophisticated dog sniff and Mahone's admission of his prior conviction for cocaine trafficking.

By presenting in its motion for summary judgment all of the factors pertaining to the seizure of the currency from Mahone, the government established probable cause to believe that the currency was related to an illegal drug transaction. "[I]t was [then] incumbent upon [Mahone] to prove the money had an independent innocent source and had not been used illegally." *$215,300,* 882 F.2d at 420. Mahone did not do this. He identified the single issue before the district court as being "whether or not a dog sniff is sufficient to forfeit money without any indicia of illegal or drug-related activity."

Mahone did not provide any explanation as to the source of the $22,474.00. Before this court, Mahone attempts to introduce his discovery responses, which he contends show that the $22,474.00 came from refinancing his home and selling a vehicle. These documents were not filed in the district court, and were not part of the documents considered by that court in ruling on the government's motion for summary judgment. Nor are they part of the record on appeal. Accordingly, we decline to consider them. *See Karmun v. Commissioner*, 749 F.2d 567, 570 (9th Cir. 1984) (this court will normally not consider evidence not presented to the district court). We note, however, that the assertions made in Mahone's discovery responses purporting to explain the source of the seized currency are nothing more than a rehash of part of the inconsistent statements he made at the time the officers questioned him.

We also decline to consider Mahone's argument that the district court's summary judgment constituted an excessive fine in violation of the Eighth Amendment. Other than a cursory reference to the Eighth Amendment, Mahone presented no argument to the district court in support of his contention. In this court, he simply asserts that the Eighth Amendment issue was "wholly ignored by the district court." Mahone's vague reference to an Eighth Amendment claim, unsupported by any argument, was insufficient to raise the issue in the district court and it is insufficient to raise the issue in this court. *See Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1186 n. 4 (9th Cir. 1997) ("Before an argument will be considered on appeal, 'the argument must be raised sufficiently for the trial court to rule

on it ....'") (quoting *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir.1996)).

AFFIRMED.