In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00132-CV


______________________________




 $130,510.00 IN U.S. LAWFUL CURRENCY, Appellant


V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 76th Judicial District Court


 Titus County, Texas


Trial Court No. 32,152




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 $130,510.00 in cash belonging to Manuel Alvarez (1) has been forfeited as contraband. That
forfeiture was decreed based on circumstantial evidence of suspicious factors, including drug-dog
alerts on the exterior of a pickup truck in which the cash was being transported and arguably on
wrappings removed from that bundled cash. The trial court found the cash was contraband, in spite
of evidence of a plausible, and at-least-partially corroborated, explanation for the legitimate presence
of that quantity of cash in the truck at that time.

 Manuel appeals, asserting the absence of legally and factually sufficient evidence to support
the forfeiture. Finding that (1) the evidence is legally sufficient but that (2) the evidence is factually
insufficient, we reverse the judgment of the trial court and remand for a new trial.

 About 12:55 a.m. on April 2, 2006, Texas Department of Public Safety (DPS) Trooper Daniel
Crooks stopped a two-week-old Dodge truck (2) traveling west on Interstate 30 (I-30) in east Texas. 
Crooks said the truck was going seventy-five miles per hour, in excess of the nighttime speed limit
of sixty-five. Driver Basilio Espinoza had an identification card but no driver's license. In the truck
were Heron Alvarez, Monica Ibarra, and two children. Heron was described by Crooks as nervous,
with a cracking voice and rapid breathing. Espinoza and Heron both told Crooks there were no large
sums of money in the truck, but consented for Crooks to search the truck. Crooks found, under the
carpet in the back of the truck's cab, a bundle of cash enclosed in plastic shrink-wrap and electrical
tape. At the scene, Heron said the money belonged to his brother Manuel, Ibarra's husband. 
Espinoza and Heron were arrested for money laundering. 

 Crooks summoned a drug detection dog, handled by Titus County Deputy H. L. Beasley. The
dog alerted on the exterior of both rear doors of the truck. Beasley said this was evidence the dog
(Lucky) had detected the odor of at least one of four illegal drugs (3) the dog had been trained to detect. 
Later, at the DPS station, five more bundles of cash were found in the truck, (4) bringing the total
amount of cash found in the vehicle to $130,510.00. Crooks said the stacks of money were packaged
with rubber bands and shrink-wrap, with electrical tape on the outside with the tape's sticky side out. 
On the other hand, Trooper Darren Lubbe said the tape, sticky side out, was between the money and
the shrink-wrapping. Though Manuel said he used shrink-wrap to bundle the money, the same way
he packaged fish, he specifically denied using electrical tape in packaging the funds. 

 Later, at the DPS station, after the money had been removed from the wrappings, some of
the wrappings were put beneath a "non-contaminated" trash can, and the drug dog alerted at the
bottom of the can where the wrappings were. Beasley said that, given that the wrappings had been
in contact with the money, this dog alert meant the money had "probably" been contaminated with
a controlled substance. 

 Lubbe testified that I-30 is a drug corridor. Lubbe also said that drug dealers use "ready made
families" to look like innocent travelers, sometimes even carrying luggage. Here, Heron traveled
with Ibarra, Espinoza, and two children, as well as some luggage. (5)

 Manuel said he and his wife, Ibarra, received a seven million dollar settlement from the death
of a son in 2004. Corroborating evidence included a December 27, 2004, deposit made for
$340,000.00 and ATM withdrawals totaling from $85,000.00 to $92,000.00. Lubbe testified that,
when all the transactions are considered, there are records of withdrawals in the neighborhood of
$82,000.00 to $92,000.00. Lubbe conceded that he did not know whether any checks were written
for cash, leaving open the possibility that, if there were ATM transactions approaching $92,000.00,
checks could have been easily cashed to total the balance needed--$38,510.00--to make up the
$130,510.00 found in the truck.

 Manuel said he went to Little Rock at the end of March so Heron could get a form from his 
probation officer. The form apparently could not be faxed or mailed . Manuel testified by deposition
and at trial that he transported the cash to Little Rock to buy a house there, to give his children a
better place to live. Manuel also testified that, previously, he paid about $50,000.00 in cash for his
house in south Texas. Manuel also said they used the trip to pay final bills on an apartment he had
rented for Heron's probationary period. When the group arrived in Little Rock, Manuel learned that
his brother-in-law had died. So Manuel caught an airplane the next day to Harlingen, by way of
Houston, for the funeral. In support, Manuel submitted into evidence a utility payment receipt, a
lease, a flight itinerary, and other receipts. Lubbe confirmed that Espinoza had told him of Manuel's
large settlement and of Manuel's intent to buy a house in Little Rock. 

 Manuel and Heron both admitted having felony convictions for possession of marihuana in
the range of thirty to fifty pounds. When the truck was first stopped, Espinoza and Heron gave
arguably inconsistent statements about the trip: Espinoza mentioned only the truck taking the trip
from Mercedes to Little Rock. Heron, and later Manuel, confirmed that, during the first
leg--Mercedes to Little Rock--the group had also used a second vehicle, a van. Manuel said the
van had been brought from Mercedes to give to Manuel's sister. 

 To entitle itself to the forfeiture of the cash, the State had to prove by a preponderance of the
evidence that the cash is contraband. Chapter 59 authorizes the State to pursue the forfeiture of
funds that constitute proceeds from illegal drug trafficking. See Tex. Code Crim. Proc. Ann. arts.
59.01-.14 (Vernon 2006 & Vernon Supp. 2008). Although Chapter 59 specifies no additional
evidentiary requirements for forfeiture beyond proof that the property is contraband, the Texas
Supreme Court has held that the State must also show probable cause for seizing a person's property. 
See Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State, 730 S.W.2d 659, 661
(Tex. 1987); see also State v. $11,014.00, 820 S.W.2d 783, 784 (Tex. 1991). "Probable cause in the
context of forfeiture statutes is a reasonable belief that 'a substantial connection exists between the
property to be forfeited and the criminal activity defined by the statute.'" Fifty-Six Thousand Seven
Hundred Dollars in U.S. Currency, 730 S.W.2d at 661 (quoting United States v. $364,960.00 in U.S.
Currency, 661 F.2d 319, 323 (5th Cir. 1981)); see State v. Thirty Thousand Six Hundred Sixty
Dollars & No/100, 136 S.W.3d 392, 407 (Tex. App.--Corpus Christi 2004, pet. denied). Property,
including currency, is subject to seizure and forfeiture if it is found to be contraband. Tex. Code
Crim. Proc. Ann. art. 59.02(a).

 Contraband is property used or intended to be used in the commission of certain felonies, or
proceeds derived from those felonies. Tex. Code Crim. Proc. Ann. art. 59.01(2)(A)-(D); State v.
Silver Chevrolet Pickup, 140 S.W.3d 691, 692 (Tex. 2004). Germane to this case, contraband is
money that is derived from or intended for use in manufacturing, delivering, selling, or possessing
a controlled substance. Tex. Code Crim. Proc. Ann. arts. 59.01, 59.02; $24,156.00 in U.S.
Currency  v.  State,  No.  06-07-00061-CV,  2008  WL  320518,  at  *743  (Tex.  App.--Texarkana
Feb. 7, 2008, no pet.); $27,920.00 in U.S. Currency v. State, 37 S.W.3d 533, 535 (Tex.
App.--Texarkana 2001, pet. denied).

 The statute places on the State the burden of proving, by a preponderance of the evidence,
that the item being forfeited is subject to forfeiture. In re One Man's Rolex Watch Yellow Gold, 223
S.W.3d 451, 452 (Tex. App.--Amarillo 2006, no pet.). Although defenses and explanations are
useful tools for analysis, the burden of proof (6) remains on the State to prove the funds were
contraband, not on the owner (7) to prove the source or purpose of the funds.

(1) The Evidence Is Legally Sufficient

 Under civil preponderance-of-the-evidence standards, evidence is legally insufficient only
when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law
or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes
conclusively the opposite of the vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex.
2005); Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). The final test
for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review." Wilson, 168 S.W.3d at 827. In making this
determination, we credit favorable evidence if a reasonable fact-finder could credit it, and disregard
contrary evidence unless a reasonable fact-finder could not disregard it. Id. This is more than a mere
question of whether "evidence exists that has some remote relation to the verdict." Id. So long as
the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment
for that of the fact-finder. Id. at 822. The trier of fact is the sole judge of the credibility of the
witnesses and the weight to give their testimony. Id. at 819. Although we consider the evidence in
a light most favorable to the challenged findings, indulging every reasonable inference that supports
them, we may not disregard evidence that allows only one inference. Id. at 822.

 Here, the State found a group of individuals in an almost-new pickup truck with $130,510.00
in cash shrink-wrapped and tucked beneath the carpet in the back of the truck's cab. A drug dog
alerted on the outside of the truck, on the driver and passenger sides, and on the bottom of a trash
can in the DPS station house. Beneath the trash can were wrappings taken from the money. 
Troopers described the wrappings as being shrinkwrap and tape previously containing the rubber-banded stacks of cash. Both Manuel and Heron have records for possession of large quantities of
marihuana. When asked by officers on the scene if the truck contained any large quantities of cash,
Heron and Espinoza initially denied it.

 In Deschenes v. State, 253 S.W.3d 374 (Tex. App.--Amarillo 2008, no pet.), evidence was
presented that a drug dog alerted on bags in the trunk of a vehicle, bags which had held money
wrapped and rubber-banded together; and the arresting officer thought Deschenes was acting
nervously and found a set of scales in the car. The appellate court found the evidence legally
insufficient under the criminal burden of proof to support Deschenes' conviction for money
laundering. (8)

 On the other hand, a seizure was upheld where a large amount of cash was found, folded,
rubber-banded, and put in plastic bags, and with fabric softener sheets then wrapped around those
bundles. State v. $104,000.00 in U.S. Currency, No. 04-04-00608-CV, 2005 WL 2012341, at *2
(Tex. App.--San Antonio Aug. 24, 2005, no pet.) (mem. op., not designated for publication). That
court, however, placed emphasis on the use of fabric softener sheets used in bundling the cash and
on evidence that such sheets were used to foil drug-detection dogs. While there is no testimony in
this record about the purpose of shrink wrapping funds, a logical inference could equate shrink-
wrapping--which describes vacuum-sealing something inside an airtight plastic covering--with the
use of fabric softener sheets. Both logically could be seen as means of defeating drug-detection
dogs: fabric softener sheets would attempt to mask the odor of drugs with another scent, while
shrink-wrapping would attempt to seal the odor of drugs inside an airtight package.

 For the purpose of this legal-sufficiency analysis, we credit the above evidence supporting
the forfeiture and disregard contrary evidence. The evidence falls within the zone of reasonable
disagreement. Therefore, the evidence is legally sufficient.

(2) The Evidence Is Factually Insufficient

 When considering a factual sufficiency challenge, we must consider and weigh all of the
evidence, not just that evidence which supports the verdict. Mari. Overseas Corp. v. Ellis, 971
S.W.2d 402, 407 (Tex. 1998). The trial court's findings of fact have the same force and dignity as
a jury's verdict on jury questions, and are reviewed for legal and factual sufficiency of the evidence
to support them by the same standards that are applied in reviewing the legal or factual sufficiency
of the evidence supporting a jury's answer to a jury question. Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); City of Hughes Springs v. Hughes Springs Volunteer Ambulance Serv., 223 S.W.3d
707, 716 (Tex. App.--Texarkana 2007, no pet.). A court of appeals must consider and weigh all of
the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and unjust. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001) (citing Pool v. Ford Motor Co., 715 S.W.2d 629,
635 (Tex. 1986)).

 "[W]hen circumstantial evidence of a vital fact is meager, a reviewing court must consider
not just favorable but all the circumstantial evidence, and competing inferences as well." Wilson,
168 S.W.3d at 814. While it is true that the evidence before the trial court supports an inference that
the money may have been in close proximity to narcotics, it does little more and is entirely
circumstantial.

 The only pieces of evidence affirmatively connecting the cash and illegal drugs are the alerts
of a drug dog on the exterior of the truck and at the bottom of a trash can under which some
wrappings from the money had been placed. That is some evidence of a connection between the
cash and illegal drugs. See State v. $11,014.00, 820 S.W.2d 783, 785 (Tex. 1991). Of course,
simply possessing and hiding a quantity of cash is insufficient to prove money laundering. See
Cuellar v. United States, __ U.S. __, 128 S.Ct. 1994, 2003 (2008). The evidence here provides a
quite attenuated connection between the cash and illegal substances. In fact, the rest of the State's
evidence is entirely circumstantial and provides mere suspicious circumstances. The question
becomes how to evaluate the sufficiency of the evidence on this specific record. When evaluating
the factual sufficiency of the evidence, we cannot ignore the evidence that Manuel had access to
millions of dollars and testified that he chose to carry cash with him to Little Rock to buy a house. 
Manuel testified he had previously purchased a house with cash.

 While the trial court was able to view the witnesses and judge their credibility, Manuel
presented strong factual evidence explaining the presence of the large sum of cash. That evidence
showed he had received a multi-million-dollar wrongful death settlement after his son died in a
house fire. That claim was corroborated with documentary evidence.

 In a newspaper article reporting on the fire in which his son died, Manuel was quoted saying
that he did not believe in banks and that he had lost several thousand dollars in cash in the fire. 
When the State cross-examined Manuel on the wisdom of previously keeping cash on hand and his
continuation of the practice, he explained that he could not control "things that God does," but that
he now owned a fireproof box. 

 On the State's side of the case, the dog alert on the bottom of a trash can is subject to a few
difficulties. The steps used in handling the wrappings and, more specifically, in how some of those
wrappings may have come to be under the trash can on which the drug dog alerted, were not proven
in an ideal way. Crooks, the officer who conducted the traffic stop and arrested Heron and Espinoza,
testified that he took the wrappings off the money and later hid those wrappings at the DPS station;
Lubbe, the "seizing officer" in the case, did not confirm that Crooks or Lubbe put the wrappings
under the trash can; and Beasley, handling the drug dog, said he was told the wrappings under the
can had come from the money. "Evidence that is so slight as to make any inference a guess is in
legal effect no evidence." Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004), citing 
Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001). While we are not concluding that the trash-can-sniff evidence is no evidence, we are charged with crediting only the evidence that is in the record,
not facts that are not proven but only surmised. This evidence is weakened by the relatively loose
connections in the way it was presented.

 Possession of a large sum of money is not illegal in and of itself. $27,920.00 in U.S.
Currency v. State, 37 S.W.3d 533, 535 (Tex. App.--Texarkana 2001, pet. denied); see also
$136,205.00 v. State, 848 S.W.2d 888, 891 (Tex. App.--Houston [14th Dist.] 1993, no writ) (despite
evidence of marihuana, drug paraphernalia, and large amount of cash at residence, positive dog alert
on safety deposit box at bank was insufficient to connect deposit-box funds to marihuana confiscated
at residence).

 Since the evidence supporting the forfeiture is entirely circumstantial and attenuated, we are
to consider not only the competing evidence, but the "competing inferences," those militating against
forfeiture. See Wilson, 168 S.W.3d at 814.

 Beyond allegedly inconclusive evidence, the State relied on the drug dog's indications. But
a drug dog's alert is just probable cause to continue investigating, not conclusive proof the money
has been exposed to a controlled substance--even if the dog had actually alerted on the money itself,
rather than on a vehicle and on a location where wrappings from the money had been placed. We
find informative a case from Minnesota pointing out the inadequacies of drug dog indications, which
pointed out (a) the subjectivity of interpreting the drug dog's alert, (b) the subjectivity of the dog, and
(c) the inability to cross-examine the dog. See Jacobson v. $55,900.00, 728 N.W.2d 510 (Minn.
2007).

 When considering the relatively weak evidence in favor of forfeiture in light of the evidence
against it, we conclude the evidence is factually insufficient (9) to demonstrate a substantial nexus
between the money seized and criminal activity. See $11,014.00, 820 S.W.2d at 784; $56,700.00
in U.S. Currency v. State, 730 S.W.2d 659 (Tex. 1987). We also heed the Texas Supreme Court's
recent cautions regarding evidence so meager as to support conflicting inferences. See Kroger Tex.
Ltd. P'ship v. Suberu, 216 S.W.3d 788, 795 (Tex. 2006).

 For that reason, though we find the evidence legally sufficient to support the trial court's
judgment of forfeiture, we find the evidence factually insufficient to support it. We reverse the
judgment and remand this case to the trial court for a new trial.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 9, 2008

Date Decided: September 12, 2008




 

1. Manuel Alvarez and Heron Alvarez will be referred to herein by their first names, to
distinguish between the two brothers.
2. Manuel, the owner of the truck and real party in interest, testified he had purchased the truck
about two weeks before the traffic stop. 
3. Marihuana, methamphetamine, cocaine, or heroin.
4. Crooks appears inconsistent here. He first said he found one bundle at the scene, then five
more when he continued his search at the DPS station. Later, he said he found three bundles at the
scene. 
5. While those things are in evidence, we are skeptical that such evidence offers any probative
value to support the State's case. In numerous forfeiture cases, we have seen testimony from various
officers that a large number of roads in east Texas are "drug corridors" and no suggestion that any
east Texas roads are not drug corridors. We also find it questionable that facts traditionally seen as
suggesting innocence become suspicious when the government may be able to confiscate an item
of substantial value by recasting such facts.
6. Though no affirmative defense is relevant here, after the State meets its burden of proof, an
innocent owner may establish the statutorily created affirmative defense of an innocent owner. Tex.
Code Crim. Proc. Ann. art. 59.02(c). To prevail under that defense, once the State has met its
burden, the burden shifts to the party claiming the defense to prove he or she acquired an ownership
interest in the property prior to, or during, the act giving rise to forfeiture. Id.; State v. Thirty
Thousand Six Hundred Sixty Dollars & No/100, 136 S.W.3d at 410; Bochas v. State, 951 S.W.2d
64, 71 (Tex. App.--Corpus Christi 1997, pet. denied).
7. The State claimed Manuel offered insufficient explanation for his possession of such a large
sum of cash, but it was not his burden to do so, until the State first proved by a preponderance of the
evidence it had probable cause to seize the money.
8. Controversy surrounds the "currency contamination" theory--that at least seventy-five
percent of all United States currency has some traces of cocaine contamination. Thus, some courts
conclude dog alert evidence is not probative. See Muhammed v. Drug Enforcement Agency, 92 F.3d
648 (8th Cir. 1996); United States v. $5,000.00 in U.S. Currency, 40 F.3d 846 (6th Cir. 1994). Other
courts have recently found that a properly trained drug detection dog will alert on only methyl
benzoate, a cocaine component that evaporates rapidly from the surface of paper currency. See
United States v. Funds in the Amount of $30,670.00, 403 F.3d 448, 455-60 (7th Cir. 2005). Some
courts require the State to show a "sophisticated dog alert," an alert resulting from a drug detection
dog trained to alert, not on just any cocaine residue, but only on the odor of methyl benzoate. See
In re Sumareh v. Doe (In re $80,045.00 in United States Currency), 161 F. Appx. 670, 671 (9th Cir.
2006); United States v. $22,474.00 in United States Currency, 246 F.3d 1212, 1216 (9th Cir. 2001). 
The issues now before us do not require us to take a position in that debate.
9. In  another  forfeiture  case  we  are  deciding  at  this  time,  $43,774.00 v. State, our cause
number 06-07-00126-CV, we find the evidence factually sufficient to support a forfeiture. In that
case, the evidence tending to controvert the forfeited property's nexus with illegal activity was
significantly weaker and not documented in nearly the same way as the evidence in this case.



Nichols Marine of Texas, L.L.C. (that Don failed to pay Nichols Marine of Texas so it could not pay
its suppliers, vendors, rent or land payments, employees, etc., and therefore Don may be sued in
Texas for any such debt). Assuming it is true that Don failed to pay some rebates owed to Nichols
Marine of Texas, L.L.C., such fact does not establish that Bridges' cause of action arises from or is
connected to such act. We hold that a Texas court may not assert specific personal jurisdiction over
Don. See Reardon, 97 S.W.3d at 275. 
General Jurisdiction
            It is clear that the actions of Don did not give rise to general jurisdiction by the Texas courts
over them. General jurisdiction is present when a defendant's contacts are continuous and
systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the
cause of action did not arise from or relate to activities conducted within the forum, a more
demanding minimum-contacts analysis than for specific jurisdiction. CSR Ltd. v. Link, 925 S.W.2d
591, 595 (Tex. 1996). There is no evidence that Don conducted systematic and continuous activities
giving rise to general jurisdiction. 
            We conclude Don Nichols, individually, and d/b/a Nichols Marine of McAlester, Oklahoma,
did not have sufficient minimum contacts with the State of Texas to support an assertion of personal
jurisdiction. We reverse the trial court's order denying the special appearance and render judgment
dismissing Bridges' claims against Don Nichols, individually, and d/b/a Nichols Marine of
McAlester, Oklahoma. 
 
 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 15, 2005
Date Decided:             April 27, 2005