**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

ALAIN CYR,
*Claimant-Appellant*,

v.

$132,245.00 IN U.S. CURRENCY,
*Defendant*.

No. 12-56988

D.C. No.
2:11-cv-07180-
R-CW

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
April 10, 2014—Pasadena, California

Filed August 21, 2014

Before: A. Wallace Tashima, N. Randy Smith,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge N.R. Smith

# SUMMARY[*]

### Civil Forfeiture

The panel affirmed the district court's decision forfeiting $132,245 for failure to report the currency when crossing the United States border in violation of 31 U.S.C. § 5316, and for bulk cash smuggling, in violation of 31 U.S.C. § 5332.

The panel compared the gravity of the claimant's offense with the amount to be forfeited, and held that forfeiture of all $132,245 did not violate the Excessive Fines clause of the United States Constitution.

### COUNSEL

Richard Kaplan (argued), Kaplan Marino, P.C., Beverly Hills, California; Eric Honig, Law Office of Eric Honig, Marina del Rey, California, for Claimant-Appellant.

Steven Reuben Welk (argued), Assistant United States Attorney, Chief, Asset Forfeiture Section; André Birotte Jr., United States Attorney; Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division; P. Greg Parham, Assistant United States Attorney, Asset Forfeiture Section; Office of the United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

N.R. SMITH, Circuit Judge:

Alain Cyr appeals the district court's decision forfeiting $132,245 for failure to report the currency when crossing the United States border in violation of 31 U.S.C. § 5316, *see* 31 U.S.C. § 5317(c), and for bulk cash smuggling, *id.* § 5332. Cyr argues the forfeiture constitutes an excessive fine under the Eighth Amendment.

Congress's enactment of 31 U.S.C. § 5332, which prohibits the act of bulk cash smuggling, affects the excessiveness analysis in bulk cash smuggling cases. A violation of § 5332, when connected with illegal activity, constitutes a serious crime that inflicts significant harm. *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1154 (9th Cir. 2012). "Congress has thus tipped the forfeiture equation in favor of the [government] in bulk cash smuggling cases." *United States v. Jose*, 499 F.3d 105, 111 (1st Cir. 2007). Accordingly, we affirm the district court.

## FACTS

Cyr is a Canadian resident. On March 12, 2011, he flew from Montreal to Los Angeles carrying $132,245 in United States currency. Upon arrival in the United States, Cyr failed to report the cash on a customs declaration form. Nine days later, as Cyr drove from Palm Springs to Los Angeles, a deputy sheriff pulled Cyr over for speeding. The deputy sheriff observed that Cyr was "extremely nervous, squirming in his seat." Upon the deputy sheriff's request, Cyr allowed the deputy sheriff to search Cyr's car; the deputy sheriff found a bag containing the $132,245. With Cyr's consent, a

drug dog (Jasper), inspected the cash and alerted a positive response, meaning that the cash was contaminated with the odor of a narcotic substance.

The deputy sheriff summoned an investigator to the scene. The investigator interviewed Cyr. At the start of the interview, the investigator noticed that Cyr "appeared to be very nervous" and that "Cyr's hands were shaking." Cyr told the investigator that he had just come from a casino, but Cyr could not remember the name of the casino and was unable to tell the investigator where the casino was located.

Cyr informed the investigator that "he had inherited the money from his father," who had recently passed away. When the investigator asked Cyr if he could prove he had inherited the money, Cyr stated that he could not provide any documentation. Instead, he stated that he had actually found the money in his father's house after his father had died. Cyr also stated that no one could corroborate his story, because he had not told anyone about finding the money. Cyr told the investigator that he was in California for vacation and intended to use the money for gambling.

The officers seized the cash and arrested Cyr. The officers also seized two sheets of notepad paper and two cellular phones from Cyr's person. The government filed a civil forfeiture action for the entire $132,245. Cyr stipulated that the defendant currency was subject to forfeiture under 31 U.S.C. §§ 5316, 5317, and 5332. However, the stipulation allowed Cyr the right to move to mitigate the forfeiture amount pursuant to the Eighth Amendment's bar on excessive fines. The district court found that, under the totality of the circumstances, Cyr failed to show that the forfeiture of $132,245 was unconstitutional.

## STANDARD OF REVIEW

We "review the district court's determination of excessiveness de novo," but we "accept the district court's findings of fact in conducting the excessiveness inquiry unless they are clearly erroneous." *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1121 (9th Cir. 2004). "A finding is clearly erroneous if we are 'left with the definite and firm conviction that a mistake has been committed.'" *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1100 (9th Cir. 2014) (quoting *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 879 (9th Cir. 2005)).

## DISCUSSION

Ordinarily, "[i]n a civil forfeiture action, the government bears the burden of proving by a preponderance of the evidence that the property is subject to forfeiture." *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013) (citing 18 U.S.C. § 983(c)(1)). By stipulating that the defendant currency is subject to forfeiture for failure to report in violation of 31 U.S.C. § 5316, *see* 31 U.S.C. § 5317(c), and for bulk cash smuggling, *see* 31 U.S.C. § 5332, Cyr has relieved the government of this burden. Thus, we answer solely the question of whether Cyr's forfeiture of $132,245 violates the Eighth Amendment's bar on excessive fines.

"If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *United States v. Bajakajian*, 524 U.S. 321, 337 (1998). Cyr carries "the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence." 18 U.S.C. § 983(g)(3). While we are not

restricted to "any rigid set of factors," *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003), we have typically "considered four factors in weighing the gravity of the defendant's offense: (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." *$100,348.00*, 354 F.3d at 1122. In light of these factors, we conclude that Cyr failed to meet his burden under 18 U.S.C. § 983(g)(3).

### 1. Nature and Extent of the Crime

A violation of 31 U.S.C. § 5316 is "solely a reporting offense" and does not constitute a serious crime under the Excessive Fines Clause. *See Bajakajian*, 524 U.S. at 325, 337. In contrast, § 5332 criminalizes *the act* of bulk cash smuggling into or out of the United States. Thus, transporting more than $10,000 of unreported currency across the border in violation of § 5332 is more than a reporting offense.

Congress highlighted that it intended to criminalize the act of bulk cash smuggling when it enacted § 5332:

> The current penalties for violations of the currency reporting requirements are insufficient to provide a deterrent to the laundering of criminal proceeds. In particular, in cases where the only criminal violation under current law is a reporting offense, the law does not adequately provide for the confiscation of smuggled currency. In contrast, if the smuggling of bulk cash were

> itself an offense, the cash could be confiscated as the corpus delicti of the smuggling offense.

USA Patriot Act, Pub. L. No. 107-56, § 371(a)(6), 115 Stat. 272, 337. Congress also attached purposes to § 5332, which included the need "to emphasize the seriousness of the act of bulk cash smuggling." *Id.* § 371(b)(3). We refuse to second-guess Congress's determination that bulk cash smuggling is a serious crime. Such a determination is better left to the legislature than to the courts. *See Bajakajian*, 524 U.S. at 336 ("[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature.").

## 2. Other Illegal Activities

Based on the evidence before it, the district court did not clearly err in finding that "the currency was probably connected to drug trafficking."[1] Cyr was carrying a substantial sum of cash. *See United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1236 (9th Cir. 1988) ("[P]ossession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs." (internal quotation marks omitted)). A drug dog alerted to the defendant currency. *See United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1216 (9th Cir. 2001) ("[A] drug detection dog's positive alert to a large sum

---

[1] We disagree with Cyr's assertion that the district court's use of the word "probably" somehow alters the effect of the district court's finding. Cyr has the burden of showing that the money is not connected to other illegal activity by a preponderance of the evidence. *See* 18 U.S.C. § 983(g)(3). The district court's finding that the money was *probably* connected to drug trafficking logically precludes Cyr from meeting this burden. *See Merriam-Webster Third New International Dictionary* 1806 (2002) (defining probably as "very likely" or "with practical certainty").

of money" constitutes "'strong evidence'" of a connection to drug trafficking.). Cyr originally told officers that he brought the money with him to California to gamble; after the government sought forfeiture, Cyr asserted that he had the money to invest in an RV business. *See id.* at 1217 ("[Claimant's] inconsistent statements about the money . . . tended to support an inference that the money was drug-related."). The deputy sheriff stated that Cyr "appeared to be extremely nervous," and the investigator stated that Cyr "appeared to be very nervous." *See United States v. $49,576.00 U.S. Currency*, 116 F.3d 425, 428 (9th Cir. 1997) ("[Claimant's] general nervous behavior [is] indicative of some illegal activity."). Finally, text messages recovered from Cyr's cell phone, and sent within a day of when Cyr was arrested, reveal an inquiry about "the money" and the statement that "Tom wants to give (it) to him tomorrow morning at 8 AM."**[2]** Viewing all of this evidence and the reasonable inferences that arise from it, we cannot say that the district court's finding was clearly erroneous.

Cyr argues that the drug-dog alert is irrelevant, because Jasper is not a sophisticated drug dog—a dog that alerts only to currency that has recently been in contact with drugs. *See $22,474.00*, 246 F.3d at 1216. However, Jasper's handler submitted a declaration stating that Jasper "does not alert to the odor of currency unless that currency has been in recent close proximity to a narcotic substance for which he has been trained to detect." This undisputed declaration suffices to qualify Jasper as a sophisticated drug dog. *See United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 982 (9th Cir. 2002) (finding drug dog sophisticated where the dog's

---

**[2]** The text messages were originally sent in French; the government subsequently translated them into English.

"handler submitted a declaration stating that [the dog] does not alert to cocaine residue found on currency in general circulation").

Cyr also contends that the government's failure to charge him with a crime combined with the other evidence he put forward to show the money's legitimacy sufficiently demonstrates that the money is not connected to other illegal activity. *See $100,348.00*, 354 F.3d at 1122 (weighing the fact that the claimant had not been charged with other criminal activity and had submitted an affidavit explaining the legitimate source of the money in an excessiveness analysis). The government does not dispute that it did not charge Cyr with an offense. Cyr also offers as evidence a distribution of property form from Quebec and affidavits from two of his friends all indicating that Cyr received money from his father.

However, the date on the distribution of property form reveals that Cyr did not complete the form until February of 2012, almost a full year *after* the government seized the money. Further, the affidavits from Cyr's friends merely mention that Cyr received money from his father; they lack even the most basic details, such as how the friends knew about the money or the amount of money Cyr's father provided. This evidence, while not negligible, falls short of leaving us with a "definite and firm conviction" that the district court made a mistake. *See Ruiz*, 754 F.3d at 1100.

### 3. Other Penalties

"'In considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence,' as are the maximum penalties that could have been

imposed under the Sentencing Guidelines." *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir. 1999) (quoting *Bajakajian*, 524 U.S. at 339 n.14) (alteration and citation omitted). "[T]he maximum penalties under the Sentencing Guidelines should be given greater weight than the statutory maximum because the Guidelines take into account the specific culpability of the offender." *$100,348.00*, 354 F.3d at 1122. We consider both the term of imprisonment and the fine suggested by the Sentencing Guidelines. *See Mackby*, 339 F.3d at 1018.

Cyr stipulated that the defendant currency is subject to forfeiture as a violation of both 31 U.S.C. § 5316 and 31 U.S.C. § 5332. Because the government could have charged Cyr with both offenses, *United States v. Tatoyan*, 474 F.3d 1174, 1182 (9th Cir. 2007), our relevant inquiry must focus on the penalties that could have been imposed for both offenses. Congress authorized a statutory maximum of five years imprisonment and/or a $250,000 fine for a violation of § 5316, 31 U.S.C. § 5322(a), and a maximum of five years imprisonment for a violation of § 5332, 31 U.S.C. § 5332(b). Under the Sentencing Guidelines, Cyr's offense level would have been 16.[3] *See* U.S. Sentencing Guidelines

---

[3] We calculate Cyr's offense level as follows: 6 levels for failure to file a currency report; a 10-level increase for the $132,245 value in currency; a 2-level increase for bulk cash smuggling; and a 2-level decrease for acceptance of responsibility. Acceptance of responsibility typically goes to defendants who plead guilty to a criminal offense, which Cyr has not done. Nevertheless, Cyr stipulated that the defendant currency is subject to forfeiture, which saved the government from having to prepare for trial. Out of an abundance of caution, we award Cyr the 2-level decrease. Cyr's remaining arguments as to the appropriate offense level are foreclosed by the plain language of the Sentencing Guidelines. We also assume a Criminal History Category of I.

Manual § 2S1.3 (2012).  The maximum fine in Cyr's case would have been $50,000, and—without any criminal history—the maximum term of imprisonment would have been 27 months for each offense.

Thus, the forfeiture of all $132,245 falls far below the maximum statutory fine but exceeds the fine under the Sentencing Guidelines.  However, forfeiture does not per se violate the Eighth Amendment simply because the amount to be forfeited exceeds the maximum fine under the Sentencing Guidelines.  *See, e.g.*, *$100,348.00*, 354 F.3d at 1122–24 (upholding forfeiture of $10,000 where maximum fine under Sentencing Guidelines could be as little as $5,000); *Mackby*, 339 F.3d at 1018 (holding that a $729,454 fine did not violate the Eighth Amendment when the maximum fine under the Sentencing Guidelines was $75,000).  Considering that the forfeiture amount here is only 2.6 times the maximum fine under the Guidelines and that Cyr's hypothetical criminal sentence could have also included a 27-month term of imprisonment for each offense, Cyr has failed to show that the amount of forfeiture is out of line with the maximum penalty under the Sentencing Guidelines.

*Bajakajian* supports this conclusion.  In *Bajakajian*, the Supreme Court held that the maximum penalties under the Sentencing Guidelines, a 6-month sentence and a $5,000 fine, weighed against the forfeiture of $357,144 because they "confirm[ed] a minimal level of culpability."  524 U.S. at 338–39.  The Court also acknowledged that the respondent "[did] not fit into the class of persons for whom the statute was principally designed," because the respondent was not a money launderer, drug trafficker, or tax evader.  *Id.* at 338.

Here, Cyr's hypothetical maximum 27 months of imprisonment for each offense and $50,000 fine do not "confirm a minimal level of culpability" when compared to the 6 months' imprisonment and $5,000 fine in *Bajakajian*. *Id.* at 339; *cf. Mackby*, 339 F.3d at 1018 (holding hypothetical $75,000 fine and 46-month term of imprisonment do not confirm a minimal level of culpability). Moreover, the forfeiture amount here is only 2.6 times the fine under the Sentencing Guidelines, whereas in *Bajakajian* the forfeiture amount was 70 times the fine under the Sentencing Guidelines.

Furthermore, Cyr's admission that the defendant currency is subject to forfeiture for bulk cash smuggling, coupled with the district court's finding that the defendant currency was probably connected to drug trafficking, places Cyr squarely "into the class of persons for whom the statute was principally designed." *See Bajakajian*, 524 U.S. at 338; *see also* USA Patriot Act, Pub. L. No. 107-56, § 371(a)(3), (5), 115 Stat. 272, 337 (indicating § 5332 is principally directed toward money launderers, drug traffickers, tax evaders, terrorists, and their couriers).

### 4. Harm

For the fourth factor, we must determine "the extent of the harm caused" by Cyr's violation of §§ 5316 and 5332. *See $100,348.00*, 354 F.3d at 1122. The harm caused by Cyr's violation of § 5316 was "minimal." *Bajakajian*, 524 U.S. at 339. "Had his crime gone undetected, the Government would have been deprived only of the information that [$132,245] had [come into] the country." *See id.*

However, his violation of the bulk cash smuggling statute constitutes a far greater harm. In the sentencing context, we have observed that "by enacting the bulk cash smuggling statute, Congress was demonstrating its view that [a violation] of the bulk cash smuggling statute constitutes a significant harm." *Del Toro-Barboza*, 673 F.3d at 1154 (internal quotation marks omitted). Congressional findings attached to § 5332 state that the "intentional transportation into or out of the United States of large amounts of currency or monetary instruments, in a manner designed to circumvent the mandatory reporting provisions . . . is the equivalent of, and *creates the same harm as*, the smuggling of goods." USA Patriot Act, Pub. L. No. 107-56, § 371(a)(4), 115 Stat. 272, 337 (emphasis added). Congress found that "the movement of large sums of cash is one of the most reliable warning signs of drug trafficking, terrorism, money laundering, racketeering, tax evasion and similar crimes." *Id.* § 371(a)(3). It also found that enforcement of § 5332 effectively combats these various types of serious criminal activity. *Id.* § 371(a)(5).

We need not decide whether *every* violation of § 5332 constitutes a significant harm for purposes of an excessive-fine analysis; here, the defendant currency "was probably connected to drug trafficking." Accordingly, had Cyr's offense gone undetected, it would have undermined the Government's efforts to "break the cycle of criminal activity of which the laundering of bulk cash smuggling is a critical part." *See id.* § 371(a)(5). Cyr's violation of § 5332 thereby constitutes a significant harm. *Accord Jose*, 499 F.3d at 112 ("We adhere to Congress's view that defendant's violation of the bulk cash smuggling statute constitutes a significant harm.").

**CONCLUSION**

These factors lead us to the conclusion that Cyr's offense leans more toward the high end of the gravity spectrum. Comparing the gravity of Cyr's offense with the amount to be forfeited, we find that forfeiture of all $132,245 does not violate the Excessive Fines clause of the United States Constitution.

**AFFIRMED.**